FRANKLIN GUYETTE *v.* THE TOWN OF BOLTON.[*]

*Vote of Town.      Proof of Handwriting.    Evidence.    Receipt.*
*Contract by Selectmen.*

A vote of a town, authorizing its selectmen to pay a bounty to such volunteers as should be mustered into service before a certain day, and be applied on a certain quota of the town, is not an open, general offer; but, to entitle a volunteer to recover the bounty, he must show some offer or promise on the part of the selectmen to him, upon the faith of which he enlisted.

A witness, to be competent to prove handwriting, must have such knowledge of it as to enable him to form some opinion of its genuineness when he sees it.

A receipt in full of a demand named therein, is a full and perfect *prima facie* defence to an action for the recovery thereof, and casts upon the plaintiff the burden of explaining it, or in some way destroying its effect as evidence.

If the selectmen of a town agree together concerning a business which they are authorized to transact, and the business is entrusted to one of them, who makes contracts in relation thereto, a jury would be warranted in finding such assent on the part of the others, or one of them, as to make the act of the one thus contracting the act of the majority, and binding on the town.

GENERAL ASSUMPSIT for the balance of a town bounty. Pleas, the general issue, payment, and accord and satisfaction. Trial by jury and verdict for the plaintiff, September term, 1871, Chittenden county, PECK, J., presiding.

The defendant introduced in evidence a receipt for one hundred and twenty dollars, given by the plaintiff to the defendant before the commencement of this suit, " in full as town bounty as a volunteer re-enlisted in the United States service for their credit on the quota of said town." The court charged that, to entitle the plaintiff to recover, it was necessary that the contract for the payment of a bounty to him in consideration of his enlisting to the credit of the town, should have been made with the selectmen, or a majority of them ; that if the selectmen, after the passage of the vote authorizing them to pay bounties, agreed together that they would pay $300 to each man who should enlist and be applied on the quota of the town, and one of them had the principal charge of the business, and the other two entrusted the matter of procuring and enlisting men to fill the quota to him, and he

---

[*] This case was decided at the general term, in November, 1872.

contracted with the plaintiff to enlist and be applied on the quota, and agreed that the plaintiff should be paid the $300 bounty, the jury would be justified in finding such assent on the part of the other selectmen, or one of them, as to make the act of the one thus contracting the act of the majority, and binding on the town, so far as that part of the case was concerned, if the contract was otherwise made out: to which the defendant excepted. The rest of the case is fully stated in the opinion.

*E. R. Hard* and *L. L. Lawrence*, for the defendant.

The witness Bronson should not have been permitted to testify to the genuineness of the pretended letter from Church, or to its contents. *Doe d. Mudd* v. *Suckermore*, 5 A. & E. 703 ; 1 Greenl. Ev. §577 ; *Bingham et als.* v. *Peters et als.* 1 Gray, 145 ; *Taylor* v. *Sutherland*, 24 Penn. 335 ; *Tharpe* v. *Gisburne*, 2 C. & P. 21 ; *Greaves* v. *Hunter*, Ib. 477 ; *Powell* v. *Ford*, 2 Stark. 164. The testimony of Sanders should have been left out of the case upon the question of genuineness of the pretended letter, for two reasons. He had no such knowledge of Church's handwriting as to make him a competent witness upon the subject. He expressed no opinion that it was the handwriting of Church. In 8 Ves. 475, Lord ELDON says : " If the witness will not swear to his belief of the writing, it is not evidence." 2 Phil. Ev. 251 ; *Burnham* v. *Alger*, 36 N. H. 182 ; *Wiggin* v. *Plummer*, 11 Foster, 270.

The receipt was *prima facie* evidence of payment in full of the claim, and the burden was upon the plaintiff to show that it was not so taken. *Burnap* v. *Partridge*, 3 Vt. 144 ; *Hutchins* v. *Olcott*, 4 Vt. 549 ; 555 ; *Charlotte* v. *Webb & Newell*, 7 Vt. 38 ; *Stevens* v. *Thompson et al.* 28 Vt. 77.

In *Sparhawk et als.* v. *Buell et als.*, 9 Vt. 41, it is said that " a receipt not under seal, acknowledging to have received full payment of a debt or legacy, is *prima facie* a bar to the recovery of such debt, and may be relied upon as evidence of payment." Such is the law laid down by all elementary writers upon this subject. 3 Phil. Ev. 381–384 ; 4 Ib. 581–2 ; 1 Greenl. Ev. § 305 ; Chit. Cont. 834, and notes.

There was no evidence of the knowledge and concurrence of

either of the other selectmen in the offer claimed to have been made by Church to the plaintiff and others. This was necessary. Sec '92, ch. 15, Gen. Sts.; *Tarbell* v. *Plymouth*, 39 Vt. 429; *Hill* v. *Marlboro*, 40 Vt. 648; *Haven* v. *Ludlow*, 41 Vt. 418; *Kupfer et als.* v. *South Parish of Augusta*, 12 Mass. 185; *Stoughton et als.* v. *Baker et al.* 4 Mass. 522; *Lee* v. *Deerfield*, 3 N. H. 29; *Andover* v. *Grafton*, 7 N. H. 298; *People* v. *Williams*, 36 N. Y. 440.

*H. H. Talcott* and *Henry Ballard*, for the plaintiff.

The charge of the court as to the right of the jury to find the assent of the other selectmen to the act of Church, was correct. *Burton* v. *Norwich*, 34 Vt. 345; *Tarbell* v. *Plymouth*, 39 Vt. 429.

The charge in relation to the testimony of Sanders and Bronson, was also correct. *Doe d. Mudd* v. *Suckermore*, 5 A. & E. 703; *Magee* v. *Osborn*, 32 N. Y. 669; *Hammond's* case, 2 Me. 33; 2 Phil. Ev., under *Handwriting*; *Homer* v. *Wallis*, 11 Mass. 309; *Utica Ins. Co.* v. *Badger*, 3 Wend. 102. If the testimony of Sanders tended to show the authenticity of Church's letter to Smith, then the testimony as to its contents by Bronson, or any one else who read it, is clearly admissible. *Cassy* v. *Robinson*, 11 Ala. 266.

Receipts do not stand on the ground of contracts, but simply amount to admissions of the party, and may be impeached by parol testimony, without violating any rule of law. They are not exclusive evidence of the intention of parties. *Sparhawk et als.* v. *Admrs. of Buell et als.* 9 Vt. 41; *McDaniels* v. *Lapham et als.* 21 Vt. 222; *Hitt* v. *Slocum*, 37 Vt. 524.

The opinion of the court was delivered by

PIERPOINT, CH. J. The plaintiff seeks to recover a sum of money promised him as bounty money by the defendant town, to induce him to enlist as a volunteer to the credit of said town, to fill the quota of said town under the call of the president of the United States, of October 17, 1863. At a meeting of the inhabitants of said town on the 7th day of December, 1863, it was voted, " That the selectmen be and they are hereby authorized to

pay a bounty not exceeding $300 to each volunteer who shall be mustered into the U. S. service before January 5, 1864, and applied to the quota of this town to be raised under the last call of the president of the United States for volunteers." The question as to the legal effect of this vote, was before this court in the case of *Johnson* v. *Bolton*, 43 Vt. 303, and it was then held that the vote was " not an open and general offer, which, being accepted, constitutes a contract "; but that to entitle a volunteer to recover by reason of it, he must show some offer or promise made by the selectmen to him, on the faith of which he enlisted.

The plaintiff in this case, to bring himself within the principle of this decision, claimed that a few days prior to his re-enlistment, one John A. Smith, a member of the same company as the plaintiff, and a resident of the town of Bolton, wrote a letter from Brandy Station, in Virginia, where said company was stationed, to Truman T. Church, one of the selectmen of said town, and the acting man in the procurement of volunteers for said town, for the purpose of ascertaining what bounty the town of Bolton would pay for men to fill its quota, and in reply received a letter from said Church, stating that said town was paying three hundred dollars bounty, and that if the plaintiff and four others that re-enlisted with him, would re-enlist to the credit of the town, they should be paid that amount. The defendant denied the writing of any such letter by Church. It then became necessary for the plaintiff, in support of his claim, to show that said Church did write such a letter, and it is in respect to the proof offered by the plaintiff for this purpose, that the first question arises. To prove the writing by the said Church to the said Smith, of such a letter, the plaintiff introduced as a witness one Sanders, who was a member of the same company as the plaintiff, and who re-enlisted a day or two after the plaintiff, and was mustered in at the same time, who testified, that " on the 15th day of December, 1863, and a short time before he himself re-enlisted, he saw in the hands of said Smith a letter from T. T. Church ; that he saw it only a minute or two, and read only a portion of it, and saw and read the signature ; and further testified that he was some acquainted with T. T. Church's handwriting, and on cross-examination he

stated that he was some acquainted with Mr. Church's handwriting ; that he had not a great deal of acquaintance with it, *if any*, before he saw that letter, and could not say he had seen him write before ;" that " his occupation had always been that of a laborer ;" and to the question put to him whether he had been accustomed to inspect handwriting, he replied that he had not ; that he could write and read writing ; that previous to seeing the letter above mentioned, he could not say that he had seen the said Church write, and had seen none of it since, except two letters written by the said Church to the witness while in Benson, Vt., one dated January 18, and the other January 29, 1864, which letters the witness had, and produced at the trial. The letter in question was not produced at the trial, but its loss was proved to the satisfaction of the court. The plaintiff introduced one Bronson, who testified as to the contents of the letter, but gave no evidence as to its authenticity. The testimony of Sanders, above recited, was all the testimony given upon the question as to whether or not Church wrote the letter in question.

The defendant insisted, and requested the court to charge the jury, that the evidence on the part of the plaintiff touching the authenticity of the pretended letter from Church to Smith, is not sufficient to justify the court in leaving the question of its authenticity, or of its contents, to the jury ; and that the testimony of Sanders respecting the authenticity of said pretended letter, should be laid out of the case. The court refused this request. In this we think there was error. The testimony of Sanders had no legal tendency to prove that the letter in question was written by Church. The witness speaks of it as a letter from T. T. Church, evidently because that name was at the bottom of it, and not as an expression of an opinion or a belief that it was in his handwriting ; for he had no knowledge or information that would enable him to have such an opinion or belief as would be admissible as evidence on the question. At the time when he saw the letter referred to, he had not seen Church write, and had no acquaintance with his handwriting, or, as the witness expresses it, " not a great deal, if any," which is equivalent to saying that he had no such knowledge as would enable him to speak as to

the genuineness of the signature at that or any future time. When the witness was on the stand, he had never seen Church write, and had no further acquaintance with his handwriting than that derived from having received two letters from Church, which he had before him, and which were conceded to be in Church's handwriting. Suppose the letter in question had also been present, would he have been a competent witness to testify to its genuineness by comparing it with the others? He is not an expert; is wholly unaccustomed to examine and compare writings; and has no knowledge except such as any one would acquire who should look at the genuine letters. But that is not the question here; the letter in question was not present, and the witness had nothing with which to compare the letters before him, except his recollection of the letter which he had seen but once before, for a moment, and that years before. Manifestly, the witness could have no opinion on the subject, and did not express any. To admit such evidence, would be going further than any adjudged case to which our attention has been called, and further than we think it would be safe to go. We think the witness should have such knowledge of the handwriting as would enable him to form some opinion of its genuineness at the time when he sees it. In *Magee* v. *Osborn*, 32 N. Y. 669, much relied on by the plaintiff, the question was as to the genuineness of Osborn's signature to a bond which was lost. The witness, who was an attorney, testified to having seen the bond, and, to his best recollection, that he had seen Osborn write on several occasions when he executed papers in the witness's office, and thus became acquainted with his signature, and that when he saw the bond he recognized it at the time, as a genuine instrument. The court say the evidence is not only admissible, but strong evidence in support of the instrument; but that case is wholly unlike the present.

The defendant also requested the court to charge the jury, that the receipt executed by the plaintiff is *prima facie* evidence that the $120 was accepted by him in full satisfaction of his claim, and that the burden is on the plaintiff to show that it was not so received. The court declined so to charge, but did charge that,

" if the plaintiff received the $120 in full of all claim for bounty
on the town, it is a full settlement, and the plaintiff cannot re-
cover ; and that the receipt tends to show a settlement in full,
but that it is not conclusive ; that a receipt may be explained
and contradicted by testimony of witnesses." · This charge, we
think, does not give the defendant the full benefit of the legal
effect of the receipt. Speaking of it as a piece of evidence tend-
ing to show a settlement in full, leaves the jury to infer that, of
itself, it is not sufficient to make out a *prima facie* defence, but
that the defendant must show something more ; whereas, the re-
ceipt, of itself, is a full and perfect defence *prima facie*, and
casts upon the plaintiff the burden of explaining it, or in
some way destroying its effect by his proof. The question here
is precisely like that decided in *Stephens* v. *Thompson*, 28 Vt. 77,
and the decision in that case must govern this.

The charge of the court as to the authority of Church, was in
accordance with several adjudged cases in this state, and we see
no error therein.

Judgment reversed, and case remanded.