JOSEPH RAMSDELL, RESPONDENT, *v.* WILLIAM A. CLARK, APPELLANT.

(Submitted June 8, 1897.   Decided July 10, 1897.)

*Separate Causes of Action—New Trial as to—Receipt—Effect of—Pleading—Damages.*

1. A complaint alleging that defendant had leased a mine from the plaintiff for a year and that defendant had worked the mine for six months, and that, in violation of the terms of the lease, he had failed to pay over half the net proceeds and had failed to work the mine in a good, workmanlike and substantial manner during that time, to the damage of plaintiff in a certain sum, and that he had failed to work the mine at all after the expiration of the said six months, sets forth three separate causes of action.

2. A new trial can be granted as to one or more of several causes of action included and tried in the same suit, where the issues have not been blended, and each cause of action remains distinguishable and separable even after verdict.

3. Where the issue or issues in one cause of action have been properly tried, and those in another cause of action in the same suit have been improperly tried, a new trial should be granted only as to those issues which have been improperly tried, if it can be done without confusion resulting upon the retrial.

4. A receipt given upon a disputed account and acknowledging "payment in full for balance due, etc.," *prima facie* establishes that payment has been made in full—a receipt given under such circumstances partakes of the nature of a contract, and cannot be treated as a mere admission of payment,

5. In an action upon a balance due upon an account, in which defendant pleaded a modification of the contract sued upon, an accounting thereunder, and payment, and

acceptance thereof by plaintiff in full settlement of his claim, plaintiff must plead some fact to justify the introduction of oral testimony to vary or contradict a receipt given as full payment of a disputed account.

6. In an action for the breach of a contract for failure to work a mine, plaintiff must show the damages arising from the breach, otherwise he is entitled to nominal damages only.

*Appeal from District Court, Silver Bow County. John J. McHatton, Judge.*

ACTION by Joseph Ramsdell, in his own right and as administrator of the estate of Clarissa Ramsdell, deceased, against William A. Clark. Verdict for plaintiff. From an order granting a new trial, defendant appeals. Modified.

Statement of the case by the justice delivering the opinion.

This action was upon a lease entered into between the respondent (plaintiff below) and appellant (defendant below), on October 20, 1887. Under the terms of the lease, defendant was to take possession of a certain mine, situated in Silver Bow county, and to work and mine the same in "a good workmanlike, and substantial manner, and to the best advantage," for one year, unless he .negotiated a sale of the said property within that period. He was to ''reduce and smelt the ore therefrom, and concentrate the same,'' at his own expense, and sell the products, and, after deducting all expenses, he was to pay one-half the net proceeds to the plaintiff. Defendant took possession of the mine on the day of the execution of the lease, but worked the same for a period of six months only.

Plaintiff instituted an action against defendant in the District Court of Silver Bow county on January 30, 1892. The complaint alleged three breaches of the covenants contained in the lease. As the first breach it averred that defendant had worked the mine for six months, but had failed to pay over to plaintiff one-half of the net proceeds realized from the ores extracted. As a second breach it alleged that defendant had failed to work the mine in a good, workmanlike and substantial manner during said six months, to the damage of

plaintiff in a certain sum. The third breach set forth was that the defendant had failed to work the mine at all after the expiration of six months, to the damage of plaintiff in a certain sum.

The defendant answered the complaint, denying certain of the allegations therein. He also averred that the terms of the lease had been modified as to accounting in respect to concentrates. As a defense to the first breach, it was alleged that an accounting had been had with plaintiff under the lease, as modified on July 10, 1888, and that he (plaintiff) had been paid, and had accepted, in full settlement of his claims, what was found to be due him.

A replication was interposed, which, among other denials, set forth that there had never been an accounting, and that the plaintiff had never been paid, and had never accepted any sum in full settlement for what was due him by reason of the first breach of the lease.

The case was tried to a jury. Upon the trial the defendant introduced in evidence the following receipt : ''Dec. 6, '94. G. H. M. Office of W. A. Clark, Butte, Montana, 7-10, 1888. Received of Ramsdell-Parrott lease, at the hands of W. A. Clark, five hundred and sixty and 79-100 dollars, payment in full for balance of royalty on ore and supplies. $560.79. [Signed] Joseph Ramsdell.''

The jury returned a verdict in favor of defendant. A motion was made for a new trial, which was granted. The appeal is from the order granting the motion for a new trial.

*Corbett & Wellcome,* for Appellant.

*J. W. Cotter* and *Wm. Scallon,* for Respondent.

BUCK, J.—The appellant concedes that there was no error in the order of the lower court granting a new trial so far as the second alleged breach of the lease is concerned, because the evidence was conflicting on that branch of the case. He objects however, to the alleged order in so far as it grants a new trial as to the first and third breaches of the lease.

Does the complaint contain more than one cause of action?

We are of the opinion that three separate causes of action are set forth by plaintiff in his complaint. It is true that each is connected with the same contract, but each differs essentially from the other two.

Can a new trial be granted as to one or more of several causes of action included and tried in the same suit?

We are of the opinion that this can done where, as in this case, the issues have not been blended, and each cause of action remains distinguishable and separable even after verdict. Section 295, First Division, Compiled Statutes 1887, and Section 1170, Code of Civil Procedure 1895, define a new trial to be "a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referees." The case of *San Diego L. & Town Co.* v. *Neal*, Cal., 20 Pac. 372, lays down this rule under an identical statute. See, also, *Lake* v. *Bender*, 18 Nev. 361, 4 Pac. 711, and 7 Pac. 74. Where the issue or issues in one cause of action have been properly tried, and those in another cause of action in the same suit have been improperly tried, it is the duty of the trial court, in passing upon a motion for a new trial, to grant it only as to those issues which have been improperly tried, where this can be done readily, and without confusion resulting upon the retrial.

Did the lower court err in granting a new trial as to the first cause of action set forth in plaintiff's complaint?

In this connection it becomes necessary to investigate the law as to the force and effect of a receipt for money paid.

Parsons, in his work on Contracts (8th Ed., 1893, vol. 2, p. 671), says:

"A receipt for money is peculiarly open to evidence. It is only *prima facie* evidence either that the sum stated has been paid, or that any sum whatever was paid. It is in fact not regarded as a contract, and hardly as an instrument at all, and has but little more force than the oral admission of the party receiving. But this is true only of a simple receipt. It often happens that a paper which contains a receipt or re-

cites the receiving of money or of goods, contains also terms, conditions, and agreements or assignments. Such an instrument, as to everything but the receipt, is no more to be affected by extrinsic evidence than if it did not contain the receipt; but, as to the receipt itself, it may be varied or contradicted by extrinsic testimony in the same manner as if it contained nothing else."

Bishop expresses a similar view in his book on Contracts (Enlarged Ed., 1887, § 176.)

From general expressions as to the rules governing a receipt in many opinions, it would seem that some of the courts have overlooked this dual character of which a receipt is capable. Thus, it is frequently asserted a receipt is not a contract; a receipt for money is only *prima facie* evidence of the truth of the statements therein contained; the signer of a receipt is not estopped by it; and no qualification is suggested or distinction expressed as to any contractual feature it may possess. This naturally gives rise to confusion on the subject. We shall quote from some of the opinions which have discussed the law pertaining to receipts, particularly as to what recitals therein may be varied or controlled by extrinsic evidence.

In *Ryan* v. *Ward*, 48 N. Y. 204, Hunt, C., in his opinion, says : "There is but a single question of law in the case. During the delivery of the hides, payments for them were usually made weekly. On several of these occasions, receipts were given for the precise amounts paid, which were expressed to be in full for the hides. In fact, the payment was not in full, but a further sum was then due. This was known to the plaintiff. There was no error, and there was no fraud. Is the plaintiff cut off by these receipts from now recovering the balance actually due him ?"

He answers the question emphatically in the negative. Proceeding in a subsequent part of the opinion, he says : The cases in which a receipt has been held to be conclusive upon the party giving it will be found to be cases where the claims or accounts were in dispute, and a compromise was

agreed upon, or where a receipt was given for unliquidated damages.''

Earl, C., in his opinion in the same case, says : ''It has long been settled in this state that a receipt furnishes mere *prima facie* evidence of the facts stated therein, and that it may be controverted or explained by parol evidence. [Citing authorities.] This grows out of the fact that a receipt is not a contract. It is a mere declaration or admission in writing. Where a contract is embodied in the receipt, then, so far as the receipt contains a contract, it cannot be controverted or explained by parol.

''It has never been intimated in any case in this state that it made any difference whether the receipt was for a specified sum of money or in full. The same rule applies, and no reason is apparent why it should not. A receipt for a specified sum of money contains a declaration that so much has been paid upon account or for a particular purpose. A receipt in full contains a declaration that a certain sum has been paid in full of all claims of a certain kind or of all demands. Neither kind of receipt embodies any contract. Both furnish only *prima facie* evidence, and are valuable only as such. Both are equally open to explanation or contradiction.''

In *Coon* v. *Knap*, 8 N. Y. 402, the receipt under consideration was as follows : ''Received, Brookfield, July 11th, 1849, of Wm. D. Knap, $40.00, in full for damage done us by the stage accident of the 13th of June last.''

The actual payment of the $40 mentioned in this receipt was not questioned. There was no mistake or fraud pleaded as to the obtaining of the receipt. The court held that it was a contract in the nature of a release, the terms of which could not be varied by parol evidence.

In *Goodwin* v. *Goodwin*, 59 N. H. 548, the receipt was as follows : ''In the Matter of the Proof of the Will of Elish Goodwin, Jr. In consideration of twenty-five hundred dollars to me paid by Martha A. Goodwin, executrix of said will, I hereby waive all right to contest said will or the proof thereof, and all claim I have or might have as heir of said deceased. [Signed] Elisha Goodwin.''

The court held, after discussing the distinction between a receipt regarded as a contract and as a mere acknowledgment : "The writing before us, denominated a 'receipt,' partakes of this double nature : In so far as it may be regarded as a receipt, it is capable of explanation and contradiction with regard to any fact erroneously recited; but in its main features it is more properly to be regarded as a contract, made binding upon the plaintiff by his signature, and on the defendant by being delivered to and accepted by her. In this aspect it could no more be varied or controlled by oral evidence than any other written contract between the parties. * * * By the terms of the writing in this case, the signer, in consideration of $2,500, agrees that he will waive or release all claim he has or might have as heir of the deceased. The contract is positive. It might, perhaps, be avoided by showing that the plaintiff's signature was obtained by fraud, or through a mistake or misapprehension of material facts. But nothing of that sort is claimed; and, the interpretation of written contracts being a matter for the court to pass upon, parol evidence is not admissible to show that common words, the meaning of which is plain, and which do not appear from the context to have been used in a peculiar sense, were in fact so used. If the document has one distinct meaning in reference to the circumstances of the case, it must be construed accordingly, and evidence that the signer intended to express some other meaning is not admissible. [Citing authorities.]"

*Krutz* v. *Craig*, 53 Ind. 561, was a case wherein the plaintiff had given a receipt in the nature of a release to the defendant. The court there said : "A receipt is the written acknowledgment of the receipt of money or a thing of value, without containing any affirmative obligation upon either party to it—a mere admission of a fact, in writing. But, when a receipt contains stipulations which amount to a contract, it becomes a contract, and must be governed by the law of contracts, and can be avoided only by fraud, mistake, failure of consideration, recission, or some way known to the law."

In *Morris* v. *Railway Co.*, 21 Minn. 91, the plaintiff had presented to the defendant a bill for labor done and materials furnished under a contract between them. Upon this bill was the following : "Winona Division. Received of Saint Paul and Pacific Railroad Company, by the hands of William Crooks, chief engineer, three thousand four hundred and ninety-three dollars, in full for the above account. [Signed] Chas. A. F. Morris."

It appeared from the evidence that the sum receipted for had not been paid to plaintiff by defendant. The court said : "A receipt may be either a mere acknowledgment of payment, or it may also contain a contract. In the former case, and so far as it goes only to acknowledge payment, it is merely *prima facie* evidence of the fact of payment, and may be contradicted by oral testimony. But, in so far as it contains a contract, it stands upon the footing of other writings containing contracts, and cannot be contradicted or varied by parol. [Citing authorities.] As the receipt under consideration does not purport to set out the terms of the contract to which it refers, it cannot be said to contain that contract; neither can it be said to contain 'a contract of acquittance, release, and discharge,' any more than does any receipt in full. It must be regarded as a mere acknowledgment of payment, and, as such, its *prima facie* effect, as establishing full payment of the plaintiff's claim, may be overcome by parol explanation showing that the full payment acknowledged was not in fact made  *  *  *  If the case were one of a compromise, or of a settlement of unliquidated damages, a somewhat different effect might perhaps be given to the receipt."

In *Tisloe* v. *Graeter*, 1 Blackf. 353, an early Indiana case, the receipt read : "Received of P. Tisloe 200 dollars for safe-keeping." It was held that the defendant could not prove by parol testimony that the money was not deposited for safe-keeping.

In *Guyette* v. *Town of Bolton*, 46 Vt. 228, the plaintiff had given the defendant a receipt for $120, "in full as town bounty as a volunteer re-enlisted in the United States service

for their credit on the quota of said town.'' The dispute was between an ex-soldier and the town as to a bounty for having enlisted as a volunteer in the United States army during the War of the Rebellion.

The court in this case said : ''The defendant also requested the court to charge the jury that the receipt executed by the plaintiff is *prima facie* evidence that the $120 was accepted by him in full satisfaction of his claim, and that the burden is on the plaintiff to show that it was not so received. The court declined so to charge, but did charge that, 'if the plaintiff received the $120 in full of all claim for bounty on the town, it is a full settlement, and the plaintiff cannot recover, and that the receipt tends to show a settlement in full, but that it is not conclusive; that a receipt may be explained and contradicted by testimony of witnesses.' This charge, we think, does not give the defendant the full benefit of the legal effect of the receipt. Speaking of it as a piece of evidence tending to show a settlement in full leaves the jury to infer that of itself it is not sufficient to make out a *prima facie* defense, but that the defendant must show something more; whereas the receipt of itself is a full and perfect defense *prima facie*, and casts upon the plaintiff the burden of explaining it, or in some way destroying its effect by his proof.''

It can be seen from these quotations, *supra*, that, even keeping in mind the distinction between a receipt regarded as a mere acknowledgment, and as possessing a contractual feature, still the rule of law is not absolutely clear when it is to be applied to the language of each particular receipt. Thus, contrast the language of the receipt in the case of *Coon* v. *Knap*, *supra*, and the language of the receipt in *Morris* v. *Railway Co.*, and of those in *Ryan* v. *Ward*, *supra*. All these cases we have cited, however, recognize the distinction given by Parsons and Bishop. The mere expression contained in a receipt ''in full payment'' does not neceessarily render the paper a contract in the nature of a release or waiver. Whether a receipt possesses any contractual feature or not must often be determined from its entire language, and also, at times,

from the language in connection with the circumstances under which it was given.

If A., to whom B. is indebted in the undisputed sum of $200, is paid by the latter $100, and signs a receipt for the sum of $200, or, mentioning the sum paid, acknowledges payment in full of the debt, nevertheless A., in an action against B. for the unpaid balance, without showing any fraud, mistake, or other excuse for having signed the receipt, can contradict it by extrinsic evidence, and show that only $100 was paid. It would only be evidence of B.'s having paid the debt just as an oral admission proved against A. would be. If, however, B. has been indebted to A. on an account the amount of which has been in dispute between them, a receipt by A. definitely specifying the entire account, and acknowledging a sum received as payment in full of the same, would possess a contractual feature; and, in order to contradict or vary the terms of it by extrinsic evidence in so far as it would be a contract, A. would be required to observe the rules of law applicable to contracts, and could not treat it in evidence against him as if it were of no greater weight than a mere oral admission on his part.

Let us apply these principles to the receipt given by the plaintiff, and relied upon by the defendant, in the case before us. As to the circumstances under which it was given, Wethey, a witness for defendant, testified that there had been a dispute between plaintiff and defendant as to one or two items of the account due under the terms of the Ramsdell-Parrott lease, and that the last settlement had between them was subsequent to the expiration of the six months during which the defendant had worked the mine. The receipt specifies the lease, and recites that a certain sum has been received by plaintiff as ''payment in full for the balance of royalty on ore and supplies.'' The literal terms of the paper stand admitted, and Wethey's testimony as to it is uncontradicted. It is not suggested that the plaintiff did not actually receive the sum of money specified therein. After the admission in evidence of this testimony and the receipt, the defendant had

established a *prima facie* defense as to the first cause of action. The burden was then upon the plaintiff to destroy the effect of this receipt. He failed to do so. It was incumbent upon him either to have had some excuse pleaded in order to have justified the introduction of oral testimony to vary the terms of or contradict the receipt; or, if he had been taken by surprise when the instrument was introduced, he might have asked leave to amend his pleadings; or he might have introduced evidence for the purpose of varying its terms, and had he been allowed to do so without objection, he could have asked leave to conform his pleadings to this line of proof. But he had no excuse set forth in his pleadings, and followed neither of the other courses suggested.

It is contended that the trial court's instructions as to this receipt were conflicting, and based upon different theories as to its legal effect. We think that the criticism of the instructions in this respect is correct.

It is urged that the defendant pleaded a settlement under a modification of the lease, and offered the receipt in evidence, for the purpose only of showing a settlement under the lease as modified.

It is true that he did so plead; but when this contract receipt was admitted in evidence without objection, whether it was evidence of a settlement under the lease as set forth in the complaint, or under the lease as alleged to have been modified, became immaterial, in the absence of any contradiction of its terms. This contract receipt was, as said in the case of *Guyette* v. *Town of Bolton, supra,* "a full and perfect defense *prima facie,* and cast upon the plaintiff the burden of explaining it, or in some way destroying its effect by his proof."

Appellant also insists that there was some evidence before the jury tending to weaken the effect of the recept.

Possibly there was some testimony which might have suggested a doubt as to the abstract justice of the settlement recited in the instrument. But there was no direct positive attack upon the receipt, such as should have been made in

order to weaken or destroy its effect. Indirectly and by inference alone could the defense it constituted have been ignored. At the close of the trial, so far as the evidence was concerned, the defendant was entitled to a peremptory instruction that the jury should find in his favor as to the first cause of action.

Despite, then, of erroneous instructions, the pleading in the answer of a modification of the lease and a settlement thereunder, and any mere possible inferences from the testimony to weaken the force of this receipt, the lower court committed error in granting a new trial as to plaintiff's first cause of action.

We are also of the opinion that error was committed in granting a new trial as to the third cause of action set forth in the complaint. The plaintiff had not shown that he had sustained any damage by reason of the defendant's failure to work the mine after the first six months, and the jury had properly been instructed that, even if they found for plaintiff on this branch of the case, they could only assess nominal damages.

For these reasons, the order granting the motion for a new trial must be modified. The case is remanded, with directions to the lower court to exclude from this order granting a new trial the first and third causes of action set forth in plaintiff's complaint, and to allow the order to stand only as to the second cause of action therein.

*Remanded.*

PEMBERTON, C. J., and HUNT, J., concur.