Jacob W. Loeb, for use of Joseph W. Moses, Appellee,
v. Daniel F. Flannery, Appellant.

Gen. No. 14,558.

1. Contracts—*how far consideration may be attacked by parol.*
Parol evidence which tends to show an absence of consideration is
competent, but such evidence which attacks the consideration to
such an extent and in such a way as to contradict the terms of the
contract or to overthrow the same, is incompetent.

2. Principal and agent—*when consideration sufficient to support
undertaking by latter with third person.* The contract by an agent
with a third person may be supported by a consideration moving
to the principal.

3. Releases—*when receipt cannot be attacked by parol evidence.*
A receipt of money recited by an instrument, which is both a receipt
and a contract, cannot be attacked by parol evidence, so as to over-
throw the contract portion of the receipt.

Assumpsit.   Appeal from the Superior Court of Cook county;
the Hon. Arthur H. Chetlain, Judge, presiding.   Heard in the
Branch Appellate Court at the March term, 1908.   Affirmed.   Opin-
ion filed June 4, 1909.

**Statement by the Court.**   This appeal is from a
judgment of the Superior Court in an action of *as-
sumpsit* brought by appellee, Loeb, against appellant,
Flannery, to recover moneys alleged to be due on the
following instrument in writing:

"November 6, 1902.
Received of Jacob W. Loeb one thousand dollars to
be held by me for him and to be returned to him by
me upon ten days' notice in writing.
D. F. Flannery."

The declaration consisted of a special count on the
instrument and the common counts for money had and
received, etc.   The general issue, want of considera-
tion and total failure of consideration were pleaded
by appellant, Flannery.   Loeb introduced the instru-
ment in evidence, proved the delivery of $1000 of his
own money to Flannery at the time the contract was
signed and delivered, the assignment of the contract,

and a demand in writing for the return of the money.

Appellant, Flannery, sought to prove by appellee, Loeb, on cross-examination, and by his own testimony and other evidence, the circumstances connected with the making of the instrument, for what purpose and for whose account the money was actually paid, for whose account and for what purpose it was received, and the conversations and transactions between certain other parties prior to the time the instrument sued on was executed and delivered. The trial court excluded the evidence.

Mr. Flannery then submitted an offer to prove the following facts and circumstances by the testimony of himself and other competent witnesses and by documentary evidence:

"That some time during the summer of 1902, William Loeb, father of Jacob W. Loeb, was and had been for a number of years engaged in the sale of commercial paper and mortgages upon real estate in Chicago; that Ellen Maguire had intimately known said William Loeb and had had transactions with him consisting, among other things, of the purchase from him of mortgages on real estate; that such relations had continued for at least fifteen years prior to 1902; that during the month of July, 1902, said Ellen Maguire owned and held in her possession, which she had purchased from said Loeb, a certain trust deed conveying property in Cook county, Illinois, executed by Edwin G. Freedman, securing his note for $3,000, together with divers other trust deeds upon certain pieces of real estate; that at the time of the purchase by said Ellen Maguire of said Freedman trust deed from said Loeb the latter represented to her that the property conveyed by it was located on Cottage Grove avenue near 55th street in Chicago; that it was improved with a three-story stone and brick flat building, and that it was of the fair cash value of $15,000, and was free from encumbrance except said trust deed of said Freedman; that Ellen Maguire, by reason of

her long continued business relations with William Loeb, relied upon the statements and representations made by him with reference to the property covered by said Freedman trust deed and she believed the same, and purchased said trust deed and note from said William Loeb for $3,000; that said statements and representations made by William Loeb to said Ellen Maguire were untrue as to the location and value of said property in this, to wit: that the said property covered by said trust deed was not located on Cottage Grove avenue near 55th street in Chicago, nor did it have erected thereon a three-story stone and brick flat building, nor was it of the value of $15,000, but, on the contrary, said property was located southwest of the Village of Oak Park in Cook county, and did not have erected thereon a building or structure of any kind, was not worth to exceed $200, and the title thereto was defective in that said Freedman was not the owner thereof in fee simple.

"That during the summer of 1902, Ellen Maguire visited the office of said William Loeb in Chicago for the purpose of collecting interest then due on one of the loans she had purchased from him; that Morris Loeb, a son of William Loeb, who was then in charge of said office, refused to pay said interest and informed her that William Loeb was in Colorado in connection with a large mining deal, and would return to his office in Chicago in a few days; that upon inquiry Ellen Maguire learned from divers persons that William Loeb had absconded and had not been at his office for several weeks prior thereto. That said William Loeb never returned to Chicago and was reported to have died in South America during the summer of 1903.

"That soon after Ellen Maguire learned that William Loeb had absconded, namely: sometime during the month of September, 1902, she employed the defendant as her attorney to represent her in procuring a return of the money paid by her to said Loeb for the Freedman

trust deed and other trust deeds which said Loeb had fraudulently induced said Ellen Maguire to purchase from him; that during the latter part of September, 1902, the defendant, in company with one Louis Maguire, a son of Ellen Maguire, called upon Jacob W. Loeb at his office in Chicago and told him all of the facts in connection with the several transactions had between William Loeb and Ellen Maguire, and particularly in respect to the misrepresentation of the facts regarding the value, location and title of the piece of property covered by said Freedman trust deed, and requested information or advice as to the whereabouts of said William Loeb; that Jacob W. Loeb then and there stated to the defendant, in the presence of Louis Maguire, that his father William Loeb, was temporarily embarrassed, and was in Colorado attempting to raise money with which to pay off his indebtedness; that Jacob W. Loeb then and there stated to defendant and Louis Maguire that he represented William Loeb and had a power of attorney from him to act for him in' all matters, and exhibited to them a general power of attorney under seal authorizing said Jacob W. Loeb to act for said William Loeb in all matters relating to his business and property.

"That said Jacob W. Loeb then and there said to the defendant and Louis Maguire that said Ellen Maguire need not worry about her business transactions in connection with his said father, and that the same would soon be settled in full by said William Loeb. That said Jacob W. Loeb then and there said that he was then engaged in selling and realizing on properties belonging to said William Loeb, for the purpose of using the proceeds thereof in settling the debts of said William Loeb; and that he would soon be able to submit on behalf of said William Loeb a proposition to said Ellen Maguire for the settlement of all her claims against him, said William Loeb. That said Jacob W. Loeb then and there said and acknowledged

on behalf of said William Loeb that the property secured by the said Freedman trust deed did not exceed in value the sum of $500 and that said Ellen Maguire would be reimbursed and paid for all losses she had sustained and might sustain by reason of her said transactions with said William Loeb.

"That several weeks thereafter Jacob W. Loeb submitted to the defendant a proposition to pay to said Ellen Maguire the sum of $2,000 in cash and convey, or cause to be conveyed, to her the title to certain real estate known as number 687 North Oakley avenue, in Chicago, which he then and there represented as having a value of $3,500, subject to an encumbrance thereon of $2,000; or certain real estate known as number 7719 and 7721 Sherman avenue, Chicago, which he then and there represented as being worth $8,500, subject to an encumbrance of $4,000; said cash and the conveyance of one of said pieces of property to be accepted by said Ellen Maguire in full settlement for the payment of said Freedman trust deed and notes. That shortly thereafter defendant submitted said proposition to Ellen Maguire, who shortly thereafter authorized and directed him to accept from said William Loeb said $2,000 in cash and a transfer to her of said premises known as number 687 North Oakley avenue, subject to an encumbrance thereon of $2,000; that defendant shortly thereafter told said Jacob W Loeb, as attorney in fact for said William Loeb, that said Ellen Maguire had accepted the latter proposition; and that said Jacob W. Loeb thereupon told defendant he would procure and deliver an abstract of title to said property and pay said $2,000 in cash and cause said conveyance to be made to said Ellen Maguire.

"That said Jacob W. Loeb afterwards represented to defendant that he was being delayed in carrying out said agreement with Ellen Maguire on account of being unable to procure an abstract of the title to said premises so to be conveyed, on account of a lack of

money to pay for said abstract and to remove tax sales or tax titles to said premises.

"That on several occasions between the acceptance of said proposition by said Ellen Maguire and November 6, 1902, said Jacob W. Loeb and Sigmund E. Loeb, the brother and partner of Jacob W. Loeb, stated to defendant that he, said Jacob W. Loeb, was then engaged in negotiating and closing the transfer of a large amount of property of said William Loeb, out of the proceeds of which he intended to and would make said cash payment of $2,000 to said Ellen Maguire.

"That on November 6, 1902, defendant called at the office of said Jacob W. Loeb and asked him whether he had succeeded in closing said last named transfer, and was then and there informed by said Jacob W. Loeb that he had succeeded in closing the same, but that he had not realized therefrom as much cash as he had expected, and would not be able to pay to Ellen Maguire said $2,000 in cash but would pay her therefrom the sum of $1,000 and would pay the balance of said cash payment and convey said property known as number 687 North Oakley avenue to Ellen Maguire within a very short time; that thereupon Jacob W. Loeb, acting for and on behalf of said William Loeb, and pursuant to said agreement between said William Loeb and said Ellen Maguire, paid to the defendant $1,000 in currency for said Ellen Maguire, which said sum defendant then and there accepted for and on behalf of said Ellen Maguire, and for no other reason or purpose whatever; that after receiving said $1,000 defendant, of his own motion and without any request whatever from said Jacob W. Loeb, or otherwise, made a lead pencil draft of the body of the instrument set forth in the first count of plaintiff's declaration herein, and handed said draft to said Jacob W. Loeb, and requested him to have the same typewritten for signature; and that said Jacob W. Loeb then copied the same verbatim, which is the document introduced in

evidence herein, which was then and there signed by defendant.

"That prior to the delivery to defendant of said $1,000 no agreement had been entered into, nor had any conversation been had between any of said parties, relative to the giving of any receipt or written instrument because of the delivery of said sum to defendant, nor was said sum delivered by said Loeb to defendant with any understanding or agreement that any receipt or other written instrument reciting the delivery of said sum of money to defendant should be given by defendant therefor; that no request or demand was ever made at any time by said Jacob W. Loeb, either before or after the delivery of said money to defendant, that the defendant should execute any receipt or other written instrument in relation to said $1,000; that there was no agreement, understanding or conversation had between defendant and said Jacob W. Loeb prior to the delivery of said $1,000 as aforesaid, nor did defendant at any time promise, that as a consideration for the delivery of said sum of $1,000 he would execute and deliver to said Loeb the instrument in writing designated as 'Plaintiff's Exhibit No. 1,' nor any other written instrument of any kind or character; that there was never at any time prior to the delivery of said money to defendant as aforesaid, nor contemporaneously with the delivery of said money to him, any understanding or agreement between defendant and said Jacob W. Loeb, nor any promise made upon the part of defendant to said Loeb, that said $1,000 so delivered to defendant should be held by him for said Loeb, in trust or otherwise, nor was there any agreement or understanding between defendant and said Loeb, or any promise upon the part of defendant to said Loeb, ever at any time made, prior to or contemporaneously with the delivery of said $1,000 to defendant, that said sum should be returned to said Loeb by defendant upon ten days' notice in writing or at any other time.

"That the said instrument in writing was voluntarily executed and delivered by defendant to said Jacob W. Loeb in the form in which the same was drafted for the sole and only purpose, upon the part of defendant, of protecting and saving him, the defendant, free and harmless from any claim or contention that might thereafter be made upon the part of said Jacob W. Loeb or said William Loeb, that he, the defendant, had accepted from said Jacob W. Loeb, for and on behalf of said William Loeb, said sum of $1,000 to compound or in compounding a felony or criminal act upon the part of said William Loeb; and that the said written instrument was not executed or delivered by defendant for any other purpose whatever.

"That defendant never at any time had any business relations or transactions of any kind or character with said Jacob W. Loeb involving either the personal business of said defendant, or the personal business of said Jacob W. Loeb, but that all the business relations and dealings had by the defendant with said Jacob W. Loeb, prior to the commencement of this suit in July, 1905, were had by defendant as the attorney for said Ellen Maguire and with said Jacob W. Loeb as the attorney in fact or attorney for said William Loeb, and related solely and exclusively to business transactions between said Ellen Maguire and said William Loeb.

"That on or about February 1, 1903, said Ellen Maguire called upon said Jacob W. Loeb and requested him to give her an abstract of title to a certain lot or lots on which she held a trust deed purchased by her from said William Loeb; and that in a conversation then and there had with said Jacob W. Loeb in reference to the agreement theretofore made by said Ellen Maguire in relation to the settlement of her claim against William Loeb on account of the money paid by her for the Freedman trust deed and note, said Jacob W. Loeb then and there said to said Ellen Maguire that he had already paid to her said attorney, Daniel F.

Flannery, the sum of $1,000 on account of said agree-
ment, and that he expected soon thereafter to be able
to pay the remaining $1,000 and convey to her the
property so agreed to be conveyed. That thereafter
said Jacob W. Loeb and said Sigmund E. Loeb had
several conversations with defendant in relation to
the payment of the remaining $1,000 so due to said
Ellen Maguire under said agreement and in relation
to the conveyance of said property so agreed to be
conveyed, and that each said Sigmund E. Loeb and
Jacob W. Loeb said to defendant that said Jacob W.
Loeb had not been able to realize in cash out of the
property of said William Loeb a sum sufficient to pay
said remaining $1,000 so due on said agreement, and
in lieu thereof offered to execute and deliver to said
Ellen Maguire the joint promissory notes of said
William Loeb, said Jacob W. Loeb and said Sigmund
E. Loeb, payable in monthly instalments of $50 each
with interest on deferred payments at the rate of six
per cent. per annum from date. That said Ellen Ma-
guire refused to accept said notes in lieu of said re-
maining $1,000 without additional security, which said
Jacob W. Loeb and Sigmund E. Loeb refused to give.
That thereafter said Ellen Maguire demanded that
the agreement theretofore made should be fully com-
plied with and notified said Jacob W. Loeb that she
stood ready and willing to accept said remaining sum
of $1,000 so due under said agreement and the con-
veyance of the property agreed to be conveyed. That
neither said William Loeb nor said Jacob W. Loeb
ever at any time paid or offered to pay to said Ellen
Maguire said remaining sum of $1,000 so due on said
agreement nor conveyed, nor offered to convey, to
said Ellen Maguire the said property so to be con-
veyed according to the terms of said agreement; and
the said Ellen Maguire has at all times been ready and
willing and has offered to fully perform said agree-
ment upon her part. That the defendant never at any
time received from the hand of Jacob W. Loeb any

money other than said sum of $1,000 so delivered to
him by said Jacob W. Loeb on November 6, 1902, in
part payment of the said money so agreed to be paid
to said Ellen Maguire.''

On objection by appellee the evidence was excluded,
and the court gave the jury a peremptory instruction
to find the issues for the plaintiff and assess his dam-
ages at the sum of $1,000. Appellant's motion for a
new trial was denied and judgment was entered on
the verdict.

FLANNERY, McKINLEY & SAMPLE, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion
of the court.

The sole question presented by the record, as stated
by the attorneys for the respective parties, is whether
the trial court erred in refusing to admit the evidence
offered by appellant under his plea of want of con-
sideration for the promise contained in the instru-
ment in suit, and in directing a verdict in favor of
appellee.

If the proffered evidence was properly excluded by
the trial court there was no other course left open
to the court than to direct a verdict in favor of ap-
pellee, for no defense to the case made by appellee
was shown. Hence the sole question presented for
consideration is the propriety of the action of the court
in refusing to admit proof of the facts sought to be
introduced by appellant before the jury.

The first contention of appellant is that oral evi-
dence is admissible to contradict or explain a receipt,
and to contradict an instrument in writing for the
payment of money as to the consideration for which
it is given. This contention is sound, we think, and
we do not find it controverted by attorneys for ap-
pellee, for they say in their argument filed herein that,
''If appellant had offered to show that the sum of

$1,000 had not in fact been received by him on the 6th of November, 1902, from appellee, we have no hesitancy in saying that such proof would have been competent, and if made would have established the truth of the plea of want of consideration, and have constituted a complete defense to the action.''

This brings us to the question whether the evidence offered by appellant tends to show a want of consideration for the undertaking contained in the instrument sued on to hold the $1,000 for appellee and to return the same to him upon ten days' notice in writing. If the evidence tendered shows a want of consideration, it is concededly admissible. If, on the other hand, it does not tend to show a want of consideration for the agreement, but tends to contradict the terms of the contract, the evidence was clearly inadmissible. We are, therefore, required to analyze the evidence excluded for the purpose of determining what it tends to prove.

The evidence shows without controversy that at the time of the execution of the writing sued on, appellee delivered to appellant $1,000. The offer of appellant does not question this fact, but admits it. The testimony of appellant shows he received the money. The instrument signed by appellant acknowledges the receipt of the money and expresses the contract between the parties with reference to the money. It clearly appears from the instrument itself that the receipt of the money was the consideration for the promise to hold it, and return it upon ten days' notice in writing. There was no other consideration given or received, and no other document executed at that interview between the parties. It is, therefore, conclusively proved and admitted that appellant on November 6, 1902, received from appellee $1,000 and that appellant immediately thereafter signed and delivered the instrument, and that the recital of the instrument—''Received of Jacob W. Loeb one thousand dollars''—is strictly in accordance with the truth.

How then can it be said or claimed that appellant's evidence, or the proof of the facts sought to be introduced on behalf of appellant by the offer made on the trial, tended to contradict or overthrow the receipt of the money by appellant? In our opinion it does not. The fact sought to be established that appellant was acting as attorney for Ellen Maguire, and that the $1,000 paid to him on November 6, 1902, was not paid for his account or benefit, but for the account of his client, and as a part payment in pursuance of a contract between her and appellee, in no wise tends to disprove that the $1,000 had been received by appellant. With reference to the defense of want of consideration it was wholly immaterial whether the money paid appellant was received by him for his account, or for the account of his client, Maguire; if for the latter it still formed ample consideration for the promise contained in his personal undertaking. For, it is not necessary, in order that there be a consideration for appellant's undertaking, that the consideration therefor move to appellant or be for his benefit. Even though the consideration paid appellant was for the benefit and account of Ellen Maguire, his principal, it was sufficient to support the undertaking executed by appellant in his own name. Hypes v. Griffin, 89 Ill. 134; Scanlan v. Keith, 102 *id.* 634; Powers v. Briggs, 79 *id.* 493; Bingham v. Kimball, 33 Ind. 184; Crum v. Boyd, 9 Ind. 289; Stackpole v. Arnold, 11 Mass. 27.

The foregoing authorities and many others establish the inadmissibility of the testimony offered upon this theory of the defense for which appellant contends. They conclusively establish the law to be that, having signed the instrument in suit in his own name after receiving from appellee the $1,000 therein recited, appellant cannot be permitted to assert that such consideration was received by him for the benefit and account of Ellen Maguire and as her attorney, and not for his own benefit, and that there was there-

fore no consideration for his promise as expressed in the instrument. The proposed proof would have established the consideration, not the want of it. It was wholly immaterial, therefore, to the defense set up in the plea of want of consideration.

The instrument here involved is one of that class of documents which have often been before the courts for adjudication. It is both a receipt and a contract, and calls for the application of the rules of evidence applicable to both, and hence, some confusion in some decisions of courts has arisen with reference to them. In as far as it is a receipt for money, it is peculiarly open to contradictory evidence. "It is only *prima facie* evidence either that the sum stated has been paid, or that any sum whatever was paid. It is in fact not regarded as a contract, and hardly as an instrument at all, and has but little more force than the oral admission of the party receiving. It often happens that a paper which contains a receipt, or recites the receiving of money or of goods, contains also terms, conditions and agreements or assignments. Such an instrument, as to everything but the receipt, is no more to be affected by extrinsic evidence than if it did not contain the receipt. * * * From general expressions as to the rules governing a receipt in many opinions, it would seem that some courts have overlooked this dual character of which a receipt is capable." Ramsdell v. Clark, 20 Mont. 103 (49 Pac. 591). For this reason, perhaps, appellant's argument proceeds upon the assumption that the proffered evidence tended to contradict that portion of the instrument in suit which is in the nature of a receipt and therefore open to oral contradiction, whereas, in truth and in fact, it has no such tendency, but it was really sought by the evidence to vary and contradict the contractual terms and provisions of the instrument.

We have above referred to the cases of Hypes v. Griffin; Scanlan v. Keith; Powers v. Briggs; Crum v. Boyd; Stackpole v. Arnold, and other cases. In An-

drus v. Mann, 92 Ill. 40, the court had before it an instrument of like character which contained a receipt for an organ followed by terms and provisions constituting a contract of lease. The trial court permitted appellee in that case to introduce oral evidence to prove that the agreement between the parties was for a sale and not a lease of the organ. In reversing the judgment solely on the ground of the error in admitting this evidence, the court said: "There is no rule more familiar or of more uniform application than, parties cannot introduce verbal evidence to contradict, change or vary written contracts on a trial at law. It is a maxim that all written contracts must speak for themselves, and their meaning or interpretation cannot be changed by verbal testimony. The books abound in decisions announcing the rule, and it is announced and applied in every case in this court. The rule is so elementary that we regard it unnecessary to refer to adjudged cases in its support." The court then proceeds in its opinion with a conclusive argument upon the inadmissibility of the evidence, which is as applicable to the case now before us as it was to the case in which it was written.

Schultz v. Plankinton Bank, 141 Ill. 116; Ryan v. Cooke, 172 id. 302; Fowler v. Richardson, 32 Ill. App. 252; Hossack v. Moody, 39 Ill. App. 17; First Nat. Bank of Litchfield v. Southworth, 117 id. 143 (affirmed in 215 Ill. 640); Egleston v. Knickerbocker, 6 Barb. 458; Henry v. Henry, 11 Ind. 236; Blakely v. Bennecke, 59 Mo. 193; Wykoff v. Irvine, 6 Minn. 344; and Holcomb-Lobb Co. v. Kaufman, 29 Ky. L. R. 1006, 96 S. W. 813, all involved this principle as applied to similar contracts. The above cited authorities clearly point out the grounds of discrimination between the right of a party to contradict or explain, by parol evidence, a document which is nothing but a receipt, and the absence of such right in cases where the instrument is both a receipt and a contract.

It will be found, we think, upon examination of the

authorities relied on by appellant, that in each instance the proof sought to be introduced tended to show that the consideration recited had never been received by the defendant, or that the proof was offered for the purpose of showing that there was a conditional delivery of the instrument, which condition had not been complied with, and that therefore the instrument was never operative. These elements are not present in the case at bar.

We think the proffered evidence was properly rejected by the court. Finding no error in the record the judgment of the Superior Court is affirmed.

*Affirmed.*