No. 83-387

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

ROBERT T. EATON, individually and
d/b/a EATON CONSTRUCTION,

Plaintiff and Respondent,

-vs-

WILLIAM R. MORSE,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Goetz, Madden & Dunn; James Goetz argued, Bozeman,
Montana

For Respondent:

Gary L. Beiswanger argued, Billings, Montana

Submitted: June 19, 1984

Decided: September 5, 1984

Filed: SEP    1984

_Ethel M. Harrison_
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Judge Nat Allen of the Thirteenth Judicial District Court, sitting without a jury, entered a judgment awarding Robert T. Eaton money damages in the amount of $57,024.40 plus costs of $2,341.51 from William R. Morse. Morse appeals.

Robert T. Eaton filed a civil action against William R. Morse on October 6, 1981 seeking payment of $56,250. The complaint alleged that Morse fraudulently appropriated money for his own use from the settlement proceeds of the "Stran Steel" case in which Morse, a practicing attorney, represented Eaton. Eaton amended the complaint to plead treble damages. Morse's answer denied the essential allegations and his counterclaim alleged that Eaton received seventy-five percent of the settlement funds contrary to a prior written 50/50 attorney fee agreement. Morse claimed Eaton owed him $56,250 as legal fees and costs. Judge Allen's judgment favoring Eaton denied Morse's counterclaim and denied Eaton treble damages. Morse appeals and Eaton cross-appeals from the denial of treble damages.

Morse represented Eaton from 1970 until 1981 in a U.S. District Court civil action against National Steel Products Company, formerly known as Stran-Steel. The federal trial of the Stran-Steel case resulted in a verdict for Eaton of over $400,000. After an appeal to the Federal Ninth Circuit and thereafter a petition for certiorari to the U.S. Supreme Court, the case was ultimately remanded and, before retrial, settled for $225,000.

Morse handled the Stran-Steel matter for Eaton on a fifty percent contingent fee. While no written evidence of the initial agreement was produced at the trial by either

party, there is no dispute that their initial written fee contract provided for a fifty percent attorney's fee after all expenses incurred by both Morse and Eaton had been paid.

The Eatons signed a formal authorization for Morse to settle for $225,000 on April 23, 1981. At the time of settlement, Eaton claims Morse and Eaton orally agreed to replace their 50 percent of net agreement with a percentage distribution of the gross settlement amount.

Morse and Eaton decided to cash the $225,000 settlement check directly from the bank in New York City. On the same day that Morse received the settlement check he and his wife drove to Denver, Colorado with Mr. and Mrs. Eaton. The two couples flew from Denver to New York City on May 10. Conflicting testimony obfuscates who insisted upon negotiating the check from the bank upon which it was drawn. Both Morse and Eaton implied an honest concern that Eaton's creditors would seize a major portion of the settlement. (Exhibits introduced at trial revealed Eaton was over $400,000 in debt. Security Bank in Billings had a $107,000 judgment against Eaton.) After receiving $225,000 cash from the bank, Eaton and Morse divided the money, placed it into their briefcases, and left immediately for Denver. Upon arrival in Denver, Morse delivered $12,500 cash to Eaton's wife, Darlene. This left Eaton and Morse each in possession of $112,500 cash.

The following day, while still in Denver, Morse purchased a certificate of deposit for $100,000 in the name of "Wm. R. Morse Office Trust Account" and Darlene Eaton purchased a similar $100,00 Certificate of Deposit in the names of her married daughters. Both certificates were for a term of 30 days, maturing June 12, 1981.

3

From this point, Eaton and Morse disagree.

Immediately after purchasing the certificates of deposit, the Eatons and Morses left Denver for Billings. The Eatons and the Morses each held, separately, $12,500 in cash of the Stran-Steel settlement. They drove as far as Sheridan, Wyoming. Eaton claims that about 9:00 a.m. on May 14, while Eaton and Morse were loading luggage in the car, that Morse presented Eaton with two handwritten and undated documents. One document was the revised attorney-client fee agreement which replaced the original fifty percent arrangement. This agreement provided that twenty-five percent of the Stran-Steel settlement proceeds went to Morse and the remaining seventy-five percent belonged to Eaton. The clear language of this revised fee agreement acknowledged: "that the above sums have been paid in full in cash from the sums paid over from the STRAN settlement." The document was written in Morse's handwriting and was undated. It was signed by both William R. Morse and Robert T. Eaton. The other handwritten agreement was a bilateral acknowledgement of full satisfaction between Morse and Eaton of all accounts other than Stran-Steel. Its terms provided that Morse received $10,000 "as payment in full for all legal services performed for matters other than the Stran-Steel case."

Contrary to Eaton's testimony that the two handwritten agreements were drafted and signed on May 14 in Sheridan, Wyoming, Morse claimed that between May 14 and June 11, an endless argument continued with the Eatons regarding an equitable division of the Stran-Steel settlement. Morse further testified that in order "to get Eaton off his back," he drafted and executed the two handwritten documents on June 11, during their second trip to Denver to redeem their certificates of deposit.

4

Morse and Eaton agreed that on June 11, 1981 Eaton and his wife met Morse and his wife in Denver, Colorado. The following day Morse and Eaton redeemed their $100,000 certificates of deposit.

Following June 12, 1981 Eaton and his wife contend that they made repeated demands upon Morse for the payment of the additional $56,250 which they maintain Morse retained contrary to their revised agreement. The Eatons engaged a Billings attorney to draft a demand letter to collect that portion of the Stran-Steel settlement. Their efforts failed. The Eatons brought this action against Morse to recover the $56,250 portion of the Stran-Steel settlement which they contend is rightfully theirs and was never remitted to them.

ISSUES:

1. Whether the District Court erred in considering parol evidence to vary the terms of unambiguous written agreements.

2. Whether there exists, under the circumstances of this case, a fraud exception to the parol evidence rule.

3. Whether an agreement that is partially in writing and partially oral can be properly taken to have altered a written fifty percent attorney's contingency fee agreement.

4. Whether, in light of a number of clearly erroneous factual findings on the part of the District Court, the District Court's verbatim adoption of Plaintiff's proposed findings constitutes error.

5. Whether the District Court was clearly erroneous in resolving the dispute in credibility in favor of the Plaintiff.

6. Whether treble damages are warranted under section 37-61-406 and/or 37-61-407, MCA.

Clarification of the validity of the attorney fee contracts is fundamental to our discussion of parol evidence.

Appellant claims that the second revised fee agreement fails for lack of consideration; therefore, the original fifty percent contract is valid and eliminates respondent's action to recover the remaining portion of his alleged seventy-five percent share. We disagree.

Credible evidence substantiates that both appellant and respondent recognized and acknowledged that neither of them had an accurate record of the costs and expenses for their labor and work performed for the extended ten-year Stran-Steel litigation. There is evidence that both parties agreed to rescind their original fifty percent of net agreement and enter into the second fee contract, based on a gross 75/25 distribution because of the dispute over costs. The change from a net to a gross computation to eliminate the accounting problem is valid consideration for the second contract. Accounts between appellant and respondent which were in dispute were finally settled by the revised handwritten contract. Resolution of issues in dispute constitutes consideration in support of the second fee agreement. Ramsdell v. Clark (1897), 20 Mont. 103, 49 P. 598. Accordingly, we conclude that the second handwritten attorney fee agreement is a valid enforceable contract supported by the requisite elements, including consideration.

The most critical issue is whether the District Court erred in considering parol evidence to show that Eaton did not, in fact, receive the agreed upon cash payment from the settlement proceeds from Morse, which evidence contradicts the unambiguous terms of their written agreement in which Eaton acknowledges full payment of all sums in cash.

6

Appellant's first three issues are consolidated in the parol evidence discussion.

Clarity of the issue warrants review of the entire text of the revised attorney fee agreement, handwritten by Morse and signed by both Morse and Eaton. The agreement reads:

"Come Now Wm. R. Morse and Robert T. Eaton and hereby enter into the following agreement:

"Whereas the parties hereto have previously entered into a written agreement for attorney fees and expenses in the case of Eaton v. STRAN-STEEL et al and companion cases, and

"Whereas a settlement has been reached in the STRAN-STEEL case in the amount of $225,000.00, and

"Whereas the parties hereto have found it necessary to adjust and revise their earlier agreements so as to reach agreement on the above STRAN-STEEL case settlement,

"Now Therefore the parties agree that the division of the proceeds of the STRAN-STEEL settlement of $225,000.00 shall be as follows: the total sum of $56,250.00 shall be paid to Wm. R. Morse, which sum shall apply to all expenses and costs expended by Wm. R. Morse, and shall also include the cost of all legal fees for associate legal counsel. The remaining balance of the STRAN-STEEL sum paid in settlement shall be deemed the property of Robert T. Eaton.

"It is further agreed that the above sums have been paid in full in cash from the sums paid over from the STRAN settlement, and all accounts between the parties are deemed paid in full."

The primary issue of this appeal focuses on the last paragraph.

The trial judge permitted Eaton to testify that Morse retained $112,500 of the settlement funds refusing to remit the additional $56,250 for a total seventy-five percent to Eaton commensurate with their revised fee arrangement. On appeal Morse contends that the parol evidence rule operates to exclude this extrinsic, oral evidence which alters the terms of their integrated, written agreement acknowledging payment of all accounts in cash. Furthermore, Morse argues that none of the exceptions to the parol evidence rule apply

to the facts before the Court.  Appellant specifies that Eaton's "bald assertion of fraud" does not prevent operation of the parol evidence rule since it was not pled with particularity under Rule 9(b), M.R.Civ.P.

The Parol Evidence Rule is embodied in section 28-2-905, MCA:

"When extrinsic evidence concerning a written agreement may be considered.  (1)  Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms.  Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:

"(a)  when a mistake or imperfection of the writing is put in issue by the pleadings;

"(b)  when the validity of the agreement is the fact in dispute.

"(2)  This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.

"(3)  The term 'agreement,' for the purposes of this section, includes deeds and wills as well as contracts between parties."

This Court has said that the term "fraud" includes constructive fraud.  Purcell v. Automatic Gas Distributors, Inc. (Mont. 1983), 673 P.2d 1246, 40 St.Rep. 1997, 2002.

Section 28-2-404, MCA, states:

"Fraud is either actual or constructive.  Actual fraud is always a question of fact."

We hold that the fraud exception to the Parol Evidence Rule, section 28-2-905(2), which recites:  "This section does not exclude other evidence . . . to establish illegality or fraud", addresses both actual and constructive fraud.

Breach of the fiduciary relationship between attorney and client constitutes "constructive fraud":

"Constructive fraud often exists where the parties to a transaction have a special confidential or

fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other.

* * *

"Where a confidential or fiduciary relationship exists, it is the duty of the person in whom the confidence is reposed to exercise the utmost good faith in the transaction, to make full and truthful disclosures of all material facts, and to refrain from abusing such confidence by obtaining any advantage to himself at the expense of the confiding party. Should he obtain such advantage he will not be permitted to retain the benefit, and the transaction will be set aside even though it could not have been impeached had no such relation existed, whether the unconscionable advantage was obtained by misrepresentations, concealment or suppression of material facts, artifice or undue influence." 37 Am.Jur.2d Fraud and Deceit § 15.

Constructive fraud, unlike actual fraud, is not required to be pled with specificity mandated under Rule 9(b), M.R.Civ.P. The existence of the fiduciary relationship between Morse and Eaton is undisputed. Eaton's complaint, although not artfully drafted, clearly alleges constructive fraud against Morse based upon his appropriation of money claimed to be the property of Eaton. Eaton's complaint filed September 30, 1981, states:

"5. That contrary to the terms of said agreement between the Plaintiff and Defendant herein, the Defendant, William R. Morse, has retained the sum of $112,500.00 (or twice the amount to which he was entitled under the terms of said agreement) for himself from said $225,000.00 settlement, has intentionally and fraudulently appropriated $56,250.00 to his own use, has never paid or accounted for said $56,250.00 to Plaintiff herein although a reasonable time for doing so has long since elapsed, and despite repeated demands by Plaintiff has failed and refused and continues to fail and refuse to return said $56,250.00 to the Plaintiff herein which is rightfully the Plaintiff's property."

Further evidence of Eaton's action against Morse in fraud is the language of the trial court's judgment. Judge Allen awarded damages to Eaton based upon Morse's act of deceit. Pertinent Conclusions of Law state:

9

"5. That the plan of cashing the $225,000.00 settlement check in New York City and the purchasing of two $100,000.00 Certificates of Deposit in Denver, Colorado, was all part of a common design and scheme put into effect by William R. Morse to permit and allow him to obtain and receive more of the $225,000.00 settlement proceeds than the $56,250.00 to which he was entitled.

"7. That, as a result of the deceit practiced by William R. Morse upon Robert T. Eaton, Robert T. Eaton has been, at the very least, damaged in the sum of $56,250 plus $774.40 interest thereon for the 30 days, for a total of $57,024.40 -- allowing nothing for interest lost on said $57,024.40 from June 12, 1981, to the present date."

We conclude that Eaton's claim of conduct against Morse, which constitutes at least constructive fraud, falls within the ambit of the fraud exception of the parol evidence rule, promulgated in section 28-2-905(2), MCA. Oral evidence is admissible.

The fourth issue presented by appellant is whether the District Court's verbatim adoption of plaintiff's proposed findings constitutes error. Appellant contends that the trial judge simply rubber-stamped the findings submitted by the respondent and in doing so denied appellant due process.

Wholesale adoption of one party's proposed findings and conclusions is not in itself automatic basis for vacating a judgment. In Re the Marriage of Glasser (Mont. 1983), 669 P.2d 685, 688, 40 St.Rep. 1518, 1521. This Court, however, disapproves of the practice where it is apparent that the trial court relied too heavily on proposed findings "to the exclusion of the proper consideration of facts and the exercise of independent judgment." In Re the Marriage of Goodmundson (Mont. 1982), 655 P.2d 509, 511, 39 St.Rep. 2295, 2297. It is acceptable procedure in a case where findings and conclusions are "extensive and detailed" and the court "explained its reasons" for adopting the findings of one party. Glasser, 655 P.2d at 688. There is no explanation of

10

the trial judge regarding his adoption of the plaintiff's proposed findings and conclusions.

Appellant only challenges two of a total thirty-one findings. The two "findings" which appellant contends are clearly erroneous are:

1. That on April 23, 1981, the date Eaton signed the settlement agreement, Morse and Eaton orally agreed to rescind their former fifty percent attorney fee agreement and enter into a new one; and,

2. That the $225,000 settlement check was ultimately cashed by the New York City bank as a result of the insistence of William R. Morse.

Appellant's argument is credible but not grounds for reversal of the trial court judgment. Erroneous findings of fact that are not necessary to support the decision of judgment of the trial court are not grounds for reversal. Wright v. Wright (1981), 623 P.2d 97, 1 Hawaii App. 581; Cochrell v. Hiatt (1981), 638 P.2d 1101, 1104, 97 N.M. 256.

Montana case law states the Supreme Court will not reverse or remand a decision of the district court when the eventual result in district court must be the same. Kirby Co. of Bozeman v. Employment Sec. Div. of Montana State Department of Labor & Industry (Mont. 1980), 614 P.2d 1040, 1043, 37 St.Rep. 1255.

The findings which appellant challenges as erroneous do not taint the lower court judgment; therefore, their incorrectness does not provide grounds for reversal.

The fifth issue presented is whether the District Court erred in resolving the credibility dispute in favor of the plaintiff.

The evidence in this case is conflicting. Plaintiff's witnesses gave one version of the facts and defendant's

11

witnesses testified to another version. The parties argue that the evidence as a whole supports their version of the facts.

This Court has often stated the well established rule governing the scope of our review:

> "In making its findings, the District Court must have chosen to believe plaintiff's version of the facts concerning the execution of the agreements, rather than the version presented by defendants. The weight of the evidence and credibility of witnesses, where the evidence is conflicting, is a matter for the trial court's determination in a nonjury case." Mont. Farm Service Co. v. Marquart & Roth (1978), 176 Mont. 357, 361, 578 P.2d 315.

The testimony in this case cannot be reconciled. The conflict had to be resolved. The District Court's evaluation of credibility favoring the respondent does not demonstrate any abuse of judicial discretion.

Appellant's final argument claims that Eaton's cross-appeal for treble damages does not apply to the facts. We agree. Section 37-61-406, MCA, applies to deceit practiced upon the court or the adverse party during the litigation process. The act of deceit relating to the present case constitutes the incident upon which the cause of action is filed. For this reason, section 37-61-406, MCA, is not statutory grounds to assess treble damages against Morse. Section 37-61-407, MCA, penalty for delay, is not supported by substantial credible evidence.

The District Court's judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

12

_____
John Conway Harrison

_____

_____
Daniel J. Shea

_____
L. C. Gulbrandson
Justices

_____
Hon. James B. Wheelis,
District Judge, Sitting
for Mr. Justice John C. Sheehy


Mr. Chief Justice Frank I. Haswell:

    I concur in the result.

_____
Frank I. Haswell
Chief Justice


13