IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 88-464

---

IN THE MATTER OF WILLIAM R. MORSE,       )        **OPINION**

an attorney and counselor at law,        )        **and**

Respondent.                              )        **ORDER**

---

The Commission on Practice filed a complaint in this Court charging William R. Morse with various violations of the Rules of Professional Responsibility. On September 1, 1988, a citation was issued to Mr. Morse. Mr. Morse filed his answer to the complaint on October 27, 1988. Subsequently, an amended complaint and an amended answer were filed. A hearing was held before the Commission on Practice on July 28, 1989, with Francis E. Gallagher, Acting Chairman, presiding. Craig D. Martinson appeared as Special Prosecutor. Mr. Morse was also present and represented by C.W. Leaphart. Subsequently the Commission issued its findings, conclusions, and recommendations dated December 21, 1989. The Commission recommended that Mr. Morse be publicly censured before this Court; be suspended from the practice of law for an indefinite period of time; and be assessed all costs of these proceedings. The findings and recommendations of the Commission are detailed and lengthy and may be examined by interested parties in the office of the Clerk of the Supreme Court.

1

On February 5, 1990, Mr. Morse filed his brief in this Court containing his objections to the Commission's findings and conclusions. On March 9, 1990, the Special Prosecutor filed his brief responding to Mr. Morse's objections. Mr. Morse filed a reply brief on March 21, 1990. In accordance with the rules governing the Commission on Practice, the matter was deemed submitted to the Supreme Court. This Court heard oral argument at Mr. Morse's request on May 15, 1990, and has reviewed the briefs, transcripts and other matters in the file.

The Court has concluded that it is appropriate to disbar Mr. Morse as recommended by the Special Prosecutor. We will review a number of the significant findings and conclusions of the Commission.

Mr. Morse is a duly licensed attorney with a principal office in Absarokee, Montana. All of the charges now against him arose out of events occurring when he represented Robert Eaton (Mr. Eaton), d/b/a/ Eaton Construction, in a legal claim that Mr. Eaton had against National Steel Products (Stran Steel). The suit was filed in the early 1970's and settled in 1981. A written fee agreement was entered into between Mr. Morse and Mr. Eaton whereby all funds collected in this case would be divided 50/50 after payment of all costs incurred by either party in pursuit of that claim. Neither Mr. Morse or Mr. Eaton produced the written 50/50 costs and fee agreement. After trial in federal district court, a verdict was entered in favor of Mr. Eaton and against Stran Steel. Upon appeal, the case was ultimately remanded to federal

2

district court for retrial. Subsequent to the remand and prior to a retrial, settlement negotiations resulted in an acceptance of an offer of settlement of $225,000 by Robert Eaton and his wife, Darleen. The acceptance of the settlement was in writing dated April 17, 1981. A check for $225,000 payable to William Morse and Robert T. Eaton, dated April 28, 1981, was delivered to Mr. Morse.

Prior to receiving the settlement check, Mr. Eaton wrote to Mr. Morse by letter dated April 24, 1981, which advised him that a fair disbursement of the settlement proceeds would be for Mr. Morse to get 25% and Mr. Eaton to get 75%, and with each party to pay his costs. Mr. Morse did not reply to this letter. Subsequently, several meetings and telephone conversations were held between Mr. Morse and Mr. Eaton regarding their fee agreement. On May 10, 1981, the settlement check was taken by Mr. Morse and Mr. Eaton, along with their wives, to New York City to cash the check. The parties left Billings, Montana and drove to Denver, Colorado. From Denver, they flew to New York where they cashed the check at the issuing bank. When they left the bank, Mr. Morse had $125,000 in cash in his briefcase and Mr. Eaton had $100,000 of cash in his brief case.

The parties flew back to Denver, Colorado on May 12, 1981. While staying in a hotel in Denver, Mr. Morse gave Darleen Eaton $12,500 in cash and took no receipt. This left each party with $112,500, or one-half of the settlement. While in Denver, Mr. Morse and Mr. Eaton went to Empire Savings and Loan and purchased 30 day Certificates of Deposit (CD). The Eaton CD was in the sum

3

of $100,000 and placed in the names of Eaton's daughters. The Morse CD in the sum of $100,000 was in the name of "Wm. R. Morse Office Trust Account" with Mr. Morse and his brother, Stephen J. Morse, being authorized to sign the CD. Mr. Morse's brother is not a lawyer. Mr. Morse used his brother's North Dakota address on the CD.

Sometime in May or June, 1981, Mr. Morse presented to Mr. Eaton two agreements, one designated "Receipt and Agreement" and one designated "Agreement". Mr. Morse drafted both agreements which are undated and in his handwriting. The "Receipt and Agreement" reduced the original fee agreement from a 50/50 fee agreement after costs to a 75/25 agreement in favor of Mr. Eaton, including costs expended by each party. Neither party had kept a detailed record of his costs. Both Mr. Morse and Mr. Eaton signed this agreement.

The "Agreement" indicated that Mr. Morse was paid the sum of $10,000 for all accounts which may be due and owing between the parties other than that relating to the Stran Steel case. Mr. Morse, Mr. Eaton and Mrs. Eaton signed this agreement.

On June 11, 1981, Eatons drove, and Morses flew to Denver to redeem their CD's. On June 12, Mr. Morse redeemed his $100,000 CD as follows: (1) a check in the sum of $56,250 payable to "WILLIAM MORSE TRUST ACCT" (This check was deposited in Mr. Morse's Absarokee bank on June 15, 1981); (2) a check in the sum of $10,000 payable to "WM MORSE TRUST ACCT", which he endorsed and cashed immediately; and (3) the balance of the $100,000 CD

4

including interest in the sum of $1,376.71 earned, in cash totalling $35,126.71. The Morse and Eatons then drove back to Billings together.

Subsequently the Eatons made repeated demands upon Mr. Morse for the payment of the $56,250 retained by Mr. Morse. Such payment was not made. Eventually Eatons filed a civil suit alleging Mr. Morse fraudulently appropriated $56,250 due to them. The case was tried in the District Court of the Thirteenth Judicial District, Stillwater County, Montana and resulted in a judgment for $57,024.40 plus costs of $2,341.51 in favor of Mr. Eaton. On appeal the judgment was affirmed by this Court. See Eaton v. Morse (1984), 212 Mont. 233, 687 P.2d 1004.

Mr. Eaton filed a complaint with the Commission on Practice alleging professional misconduct in Mr. Morse's mishandling of the settlement proceeds in the Stran Steel case. The hearing was held in Billings, Montana, in July 1989 before nine members of the Commission, consisting of six attorneys and three non-attorneys. The Commission unanimously concluded that Mr. Morse co-mingled funds, misappropriated funds and breached his fiduciary duty to his client.

The Commission made findings of fact 1 through 42 in connection with the charges brought against him. We will now review the findings and conclusions of the Commission with regard to each of the counts filed against Mr. Morse before the Commission.

COUNT I: Failure of Mr. Morse to pay to Mr. Eaton $56,250.

5

The Commission found that Mr. Morse retained the sum of $56,250 plus interest which was the property of Mr. Eaton and to which he was not entitled. That finding is confirmed by the District Court judgment in the suit brought by Mr. Eaton against Mr. Morse, which was subsequently affirmed by this Court. The Commission concluded that such conduct constituted a violation of Rule 7(b) of the Rules for Lawyer Disciplinary Enforcement and is contrary to the highest standards of justice and morality. There can be no significant argument with regard to Count I because the essential elements were established by the District Court judgment and subsequent affirmation on appeal by this Court. Of itself, Count I is clearly sufficient to justify the conclusions and recommendations of the Commission. We affirm the findings and conclusions of the Commission as to Count I.

COUNT II: Failure to hold his clients funds separate from his own; failure to properly account for disbursement of the funds; failure to make a full accounting of all of the settlement money; false testimony under oath before the trial court; misrepresentation and deceit of client; and breach of fiduciary duty.

The Commission concluded that Mr. Morse failed to safeguard Mr. Eaton's funds by failing to maintain a separate account and place the proceeds in a properly negotiable instrument payable to the client. It concluded that Mr. Morse never gave Mr. Eaton a satisfactory written accounting of the $225,000 settlement proceeds despite numerous requests by Mr. Eaton. It concluded that Mr. Morse falsely testified, under oath at the civil trial, that all

6

funds had been properly accounted for. It further concluded that the money was never accounted for by Mr. Morse nor shown to have been given to Mr. Eaton in any form. The Commission concluded that such conduct constitutes a violation of the Rules of Professional Conduct, Rule 1.15, Rule 3.3 and Rule 8.4.

Mr. Morse argues that the Commission erred in concluding he had violated Rule 3.3. It is true that Rule 3.3 primarily is directed to actions of a lawyer acting in his capacity as an advocate in court. Mr. Morse argues that he was speaking as a witness rather than as an advocate, so that Rule 3.3 is not applicable. That is a technical argument which overlooks the nature of the grievous conduct on the part of Mr. Morse. The key conclusions on the part of the Commission with regard to the false testimony are:

> 15. That at the civil trial held on December 14-20, 1982, <u>Morse testified</u>, under oath, that all funds had been properly accounted for, <u>which statements were</u>, in fact, <u>false.</u>
>
> . . .
>
> 21. That the <u>Testimony of Morse at the civil trial</u> before the Honorable Nat Allen in regards to the accounting of the settlement <u>was in fact false</u>, and was a violation of Rule 3.3(a)(1) of the Rules of Professional Conduct. (Emphasis supplied.)

So far as the technical argument is concerned, the violation of Rule 3.3 is not essential to the opinion for the reason that the conduct clearly violated Rule 7(b) of the Rules Governing the Commission on Practice which provides that discipline may be imposed for "<u>any act committed by an attorney contrary to the</u>

7

<u>highest standards of honesty</u>, justice or morality." (Emphasis supplied.) Making false statements under oath in the course of trial clearly violates the highest standards of honesty and morality required on the part of any attorney. We conclude that the giving of false testimony by Mr. Morse on the central issue of litigation, that is whether or not he had made payment to Mr. Eaton, is sufficiently reprehensible in nature to warrant indefinite suspension or disbarment in and of itself.

In oral argument Mr. Morse argued that this Court's decision rested on which of two men's version of the facts it chose to believe - Mr. Eaton's or Mr. Morse's. He argued that there is not clear and convincing evidence to support the Commission's findings and conclusions. He further argued that Mr. Eaton is a "psychopath and a liar" and thus his testimony is not worthy of belief. However, as the Special Prosecutor pointed out, Mr. Eaton is not before this Court for violations of the Rules of Professional Responsibility. Mr. Morse is. We have carefully reviewed the transcript of the hearing before the Commission to determine whether the facts warrant discipline of Mr. Morse. We have concluded that there is clear, convincing, and overwhelming evidence to support both the findings and the conclusions of the Commission.

Mr. Morse contended that one receipt stating the agreement of the parties as to the distribution of the proceeds of the settlement check is a sufficient "accounting". He argued that a "paper trail" is necessary for day to day operation of a law office

8

when property moves from one ownership or status to another through the medium of the lawyers accounts, but that a paper trail is not necessary when the parties know how the money is agreed to be divided. We disagree. As Mr. Morse admits, the purpose of an accounting is to protect the client. Had a proper accounting been made in the present case, both the client and the lawyer would have been protected. Mr. Morse's testimony was replete with his acknowledgement that the Eatons were hostile towards him. A proper accounting would have protected all parties. Clearly an appropriate accounting was not made in the present case. Mr. Morse gave contradictory explanations with regard to the transfer and delivery of the money. The testimony of Mr. Eaton was largely consistent and was supported by the testimony of other witnesses. As previously stated, there is clear, convincing and overwhelming evidence to support the findings and conclusions as to Count II. We affirm the findings and conclusions of the Commission as to Count II.

The Special Prosecutor has suggested that Mr. Morse should be disbarred rather than indefinitely suspended, as recommended by the Commission. Montana law does not provide any legal difference between the two. Under either punishment, the attorney may petition for reinstatement. However, we conclude there is a distinction to be made.

Black's Law Dictionary (Fourth Addition) defines "disbar" in England as an act "analogous to striking an attorney off the rolls," and in America as a rescission of an attorney's license to

9

practice at its bar. "Suspension" is defined as a "temporary stop, a temporary delay, interruption, or cessation." Thus, while "suspension" implies only a temporary punishment, "disbarment" implies a more permanent or severe punishment.

Unfortunately, in the majority of jurisdictions there has been an implied difference between the two but a total failure to define what that difference may be. In either case, under Montana law, an attorney may petition for reinstatement under Rule 20, Rules for Lawyer Disciplinary Enforcement. Section 37-61-309, MCA, provides that this Court has the discretion to deprive an attorney of the right to practice law permanently or for a limited period, according to the gravity of the offense, with one exception. The exception is where an attorney is convicted of a felony or misdemeanor involving moral turpitude. Upon conviction, the judgment must be that the attorney's name be stricken from the roll of attorneys. Section 37-61-301 and 309, MCA.

There is confusion in this area of law in Montana. Disbarment and indefinite suspension are not statutorily or otherwise defined under Montana law. Our statutes cited above provide for one situation where an attorney must be "stricken from the roll of attorneys," which is enumerated in a statute which refers to "disbarment" and "indefinite suspension" interchangeably. At the same time, the Rules for Lawyer Disciplinary Enforcement, Rule 20, provides for the reinstatement of both disbarred and suspended attorneys.

Due to the nature and severity of the offenses in this case,

10

we conclude disbarment, as recommended by the Special Prosecutor, is appropriate rather than indefinite suspension and public censure as recommended by the Commission on Practice.

The Supreme Court of the State of Montana unanimously concludes as follows:

1. That Mr. Morse shall be disbarred from the practice of law.

2. That Mr. Morse shall pay all costs of the proceedings before the Commission on Practice.

IN ORDER TO CARRY OUT THE FOREGOING, THE COURT ORDERS:

1. That Mr. Morse's disbarment from the practice of law as an attorney and counselor in the State of Montana, including all tribunals and other bodies of the State, shall commence at 5:00 p.m. on July 16, 1990.

2. That Mr. Morse is required to give the notices, to deliver papers or property, and otherwise comply with the provisions of Rule 21, Supreme Court of the State of Montana, Rules for Lawyer Disciplinary Enforcement, which states as follows:

**NOTICE TO CLIENTS AND OTHERS**
**A. Recipients of Notice and Contents of Notice.** Unless otherwise ordered by the Supreme Court, within ten (10) days after the date of the order of the Court imposing the discipline of disbarment or suspension, the respondent shall notify or cause to be notified by registered or certified mail, return receipt requested, (1) all clients being represented in pending matters; (2) any co-counsel in pending matters; and (3) any opposing counsel in pending matters or, in the absence of such counsel, the adverse parties, that the Court has ordered the disbarment or suspension of respondent and that respondent is therefore disqualified to act as a lawyer after the effective date of the order.

11

**B. Notice to Clients of Respondents Who Are Disbarred or Suspended.** The respondent shall deliver to all clients being represented in pending matters any papers or other property to which they are entitled and shall notify them and any counsel representing them of a suitable time and place where the papers and other property may be obtained, calling attention to any urgency for obtaining the papers or other property.

**C. Notification to Court.** In the event the client does not obtain another lawyer before the effective date of the disbarment or suspension, it shall be the responsibility of the respondent to notify in writing the Judge of the court having jurisdiction of the pending matter of the circumstances.

3. The Secretary of the Commission on Practice shall furnish to this Court, to Mr. Morse and to his counsel an appropriate statement of Commission costs. Costs shall be payable to the Commission on Practice of the State of Montana on July 16, 1990, unless otherwise ordered by this Court. In the event that Mr. Morse shall fail to pay such costs by the designated date, this Court shall cause judgment to be entered against Mr. Morse and appropriate collection steps to be taken.

4. Copies of this opinion and order shall be mailed to Mr. Morse; Mr. C.W. Leaphart; Mr. Craig D. Martinson as Special Prosecutor; the chairman of the Commission on Practice; George L. Bousliman, Executive Director of the State Bar of Montana; to each of the clerks of all of the District Courts of the State of Montana; the Clerk of the Federal District Court for the District of Montana; and the Clerk of the Circuit Court of Appeals of the Ninth Circuit.

DATED this 12th day of June, 1990.

J. A. Turnage

12

_[signatures]_

Justices

_[signature]_

District Judge Thomas Honzel
sitting for Justice John C.
Sheehy

13