John E. BAKER, et al., Appellants,

v.

John W. PLOETZ, Respondent,

Morris, Fuller & Seaver,
P.A., Respondent.

No. C6–98–2144.

Court of Appeals of Minnesota.

July 27, 1999.

Scott A. Johnson, Johnson Law Group LLP, Minnetonka, for appellants.

John W. Ploetz, St. Paul, pro se respondent.

Richard M. Carlson, Morris Carlson & Hoelscher, P.A., Minneapolis, for respondent Morris, Fuller & Seaver, P.A.

Considered and decided by LANSING, Presiding Judge, KALITOWSKI, Judge, and SCHULTZ,* Judge.

## OPINION

KALITOWSKI, Judge

Appellants John E. Baker and Barbara K. Baker contend the district court erred by denying treble damages in their fraud action against respondent Morris, Fuller & Seaver, P.A. (MFS). Respondents John W. Ploetz and MFS argue the court erred by denying their motions for judgment notwithstanding the verdict (JNOV) because the elements of causation and damages were not met. MFS argues the court erred by finding it vicariously liable for respondent Ploetz's intentional wrongdo-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ings. Ploetz argues the court erred by allowing punitive damages and by not granting JNOV because no attorney-client relationship existed between him and appellants.

## FACTS

In 1993, appellant John Baker answered an advertisement placed by Robert Annenberg seeking real estate investors to form a partnership to acquire real estate throughout the United States. In October 1993, Annenberg sent Baker a proposed purchase agreement between his company, Property Access & Control; the Bakers; and Michael Fischer, a Minnesota resident who misrepresented that he was the seller of the property. The purchase agreement represented the acquisition of condominium units in Minneapolis for $15,500 per unit. The actual acquisition price of the condominiums was $13,000 per unit, from another seller. Allegedly, Annenberg arranged the deal so that he could pocket the $2,500 difference without his "partner's" knowledge.

Baker expressed interest in investing in 12 of the 26 condominium units and approved the partnership agreement, but wanted to see the condominium units before remitting the $72,000 down payment. On November 1, 1993, Baker met Fischer at one of the units. Fischer represented that he was the actual seller of the condo units, and borrowed keys from the actual owner to show Baker one or more units. Baker then went to the offices of Morris, Fuller & Seaver, P.A. (MFS), to close on the deal. Baker had been given John Ploetz's name as the attorney who would close the transaction. Baker met Ploetz at the law office of MFS, and conducted the closing during business hours. MFS earned the fees from the transaction, and a later disbursement for excess costs was made to Baker from the MFS trust account.

Baker alleges Ploetz received private instructions from Annenberg to ensure that Baker saw only certain documents at the closing. Documentation supports the allegation. The only closing documents Baker saw during the meeting reflected the false $15,500 acquisition price. In his deposition Michael Fischer testified that he was instructed by Ploetz not to attend the closing, even though his name appeared on the documents as the seller of the units. Baker testified that he was confused at the closing because the papers represented that he was buying the condominiums from Property Access & Control, rather than acquiring them jointly as stated in the partnership agreement. Baker testified that Ploetz assured him the assignment was the way these transactions were structured in Minnesota. Baker claims that had he seen the right papers, he would have understood he was assuming contracts for deed, that Michael Fischer was not the true owner of the properties, and he would not have gone through with the deal. Instead, Baker tendered the $72,000 down payment to Ploetz. On December 1, 1993, Ploetz returned $2,769.09 of excess closing funds to Baker.

Later in December 1993, Baker began to receive notices from one of the actual owners of the condominiums demanding payment because Property Access & Control had defaulted in its contract for deed payments for the acquisition of the condominiums. On March 27, 1995, the Bakers filed a complaint against Ploetz and MFS for the damages they sustained arising out of Ploetz's role in the land deal. The case went to trial in May 1998. After a week of trial, the jury found that Ploetz committed fraud, that he did so while acting within the scope of his employment, that the fraud was a direct cause of damages, and that the damages amounted to $48,000. The jury also found Ploetz was negligent in conducting the closing of the condominium units, although it awarded no damages arising out of the negligent conduct.

Following the verdict, Baker moved for treble damages under Minn.Stat. §§ 481.07 and 481.071 (1998). Ploetz and MFS moved for JNOV, a new trial, and

remittitur. The court denied respondents' motions, and awarded treble damages against Ploetz pursuant to Minn.Stat. §§ 481.07 and 481.071, but concluded MFS was not liable for treble damages.

## ISSUES

1. Do Minn.Stat. §§ 481.07 and 481.071 (1998) impose liability on an attorney's firm to the same extent as on the individual attorney?

2. Did appellants meet their burden of proof of showing causation and damage, entitling them to judgment?

3. Is MFS vicariously liable for Ploetz's wrongdoing?

4. Did the district court err in allowing punitive damages?

5. Did the jury err in determining an attorney-client relationship existed between appellants and Ploetz?

## ANALYSIS

■ A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Also, where the material facts are not in dispute, a reviewing court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### I.

■ Appellants argue the district court erred in not holding MFS liable for treble damages for the fraud committed by Ploetz. The applicable statute provides that an attorney who

> with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall * * * be liable to the party injured in treble damages.

Minn.Stat. § 481.07 (1998). Also, every attorney who "shall be guilty of any deceit or collusion * * * shall forfeit to the party injured treble damages, to be recovered in a civil action." Minn.Stat. § 481.071 (1998). These two sections, which are virtually identical, apply when an attorney has intentionally participated in deceit or collusion. *Gilchrist v. Perl*, 387 N.W.2d 412, 419 (Minn.1986).

Here, the jury found that Ploetz committed fraud, that he was liable for the damages, and that MFS was vicariously liable. Appellants moved for treble damages under the above statute, and the district court ordered them against Ploetz but not against MFS. Appellants argue the court erred by failing to apply principles of agency and vicarious liability to MFS. We agree.

■ When an employee is liable for punitive damages, those damages may also be recovered from the employer if the employee was acting within the scope and course of employment. *City of Minneapolis v. Richardson*, 307 Minn. 80, 91, 239 N.W.2d 197, 204 (1976) (concluding city was liable for punitive damages levied against some of its police officers for their discriminatory treatment of perpetrator).

In *Opatz v. John G. Kinnard & Co.*, a broker in an investment firm violated a Minnesota securities statute that allowed recovery for costs, interest, and attorney fees. 454 N.W.2d 471, 473–74 (Minn.App. 1990) (referencing Minn.Stat. § 80A.23, subd. 2 (1988)). This court held the investment firm also liable even though the statute only referred to a specific class of defendants and did not address vicarious liability, finding:

> [I]n cases where the common law would allocate the liability of an agent or employee to the principal or employer, it may apply to allocate liability for statutory violations in the same manner.

*Opatz*, 454 N.W.2d at 475. The *Opatz* court held that since the individual broker was acting within the scope of his apparent authority when committing the fraud, his corporate principal may be held responsi-

ble for the *full extent* of the individual's liability. *Id.* at 475–76.

This case is similar to *Opatz*. Here, Ploetz is liable for treble damages under the statute. While the statute does not address vicarious liability of a law firm, common law principles of respondeat superior and vicarious liability indicate that the law firm is liable to the same extent as the individual lawyer. Additionally, policy reasons support this result. As appellants contend, if firms are not liable, they may fail to determine how honestly or fraudulently their attorneys are conducting themselves in order to insulate the firm from liability. Further, because, as here, an attorney who has committed fraud often will face disbarment, the attorney may lack the resources to pay treble damages, and victims of fraud will be unable to recover to the extent the legislature intended.

■ Contrary to the district court's analysis, the liability of a law firm under this statute is based not on its knowledge of or participation in the fraud, but on its employee's violation of the statute while acting in the scope of employment. We thus conclude the district court erred by awarding treble damages against Ploetz but not against MFS.

## II.

■ Respondents argue they are entitled to JNOV because appellants did not prove the elements of causation and damage, entitling them to judgment. The district court may grant JNOV when "the verdict is against the overwhelming evidence so 'that reasonable minds cannot differ as to the proper outcome.'" *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 442 (Minn.App.1996) (quoting *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983)). A motion for JNOV admits "every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party." *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

Respondents allege that Ploetz's actions were not the direct cause of appellants' damages, and that any losses appellants incurred resulted from Property Access/Annenberg's failure to perform pursuant to the partnership agreement. Respondents also contend Annenberg's fraud is a superseding cause because it occurred between Ploetz's actions and the injury. We disagree.

■ Causation is usually a fact issue for the jury, but may be decided as a matter of law when reasonable minds can arrive at only one conclusion. *Gustafson v. Chestnut*, 515 N.W.2d 114, 116 (Minn. App.1994). Here, the record shows that Baker testified about the meeting with Ploetz. He said he understood that Ploetz was the partnership's attorney, and that Ploetz was doing the closing. He testified that Ploetz had him sign a document that he understood was a contract for deed, but was really an assignment for a contract for deed. He said he was confused that the document said he was buying from Property Access/Annenberg, instead of buying jointly with them. Baker testified that he asked Ploetz about it, and Ploetz explained that this was the way it was done in Minnesota. He also said Ploetz helped him to feel more comfortable, and that the document stated, as he had expected, that he was buying 12 units at $15,500. The closing papers included a signed statement by Ploetz that said,

> The * * * settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be distributed in accordance with this statement.

Baker then tendered the $72,000 down payment to Ploetz.

From Baker's testimony and related exhibits the jury could have reasonably believed that, but for Ploetz's role in the closing, Baker would not have tendered the $72,000. Thus, the jury could have reasonably decided that Ploetz was the

cause in fact and proximate cause of appellants' damages. We conclude the verdict was not against the overwhelming evidence such that reasonable minds could not differ as to the proper outcome when viewed in the light most favorable to appellants.

■ Respondents also argue that the motion for JNOV should have been granted because appellants failed to meet their burden of proving damage. By special verdict forms, the jury found that although Ploetz's actions constituted negligence, no damages resulted. But the jury also found that Ploetz committed fraud resulting in $48,000 of damage. MFS argues that these findings are inconsistent and require JNOV because the standard for damages for negligence is broader than those allowed for fraud. We disagree.

Here, the fundamental difference between the negligence claim and the fraud claim is that fraud requires an intentional act. Thus the jury could have determined that appellants' damages resulted from Ploetz's intentional acts that were done to deceive and defraud appellants and that the deception was not the result of negligence. Baker testified that Ploetz told him the arrangement was proper in Minnesota, and Ploetz signed a document saying the closing was done properly. These are affirmative misrepresentations on which the jury could have based its verdict and damage award. We conclude the jury awards of $0 for negligence and $48,000 for fraud are reconcilable.

■ MFS also contends appellants suffered no damages because they recovered more than the amount of their losses. But,

> [a] trial court has the broadest possible discretion in determining the adequacy of damages and the influence of passion and prejudice on a jury.

*Ruppert v. Yaeger*, 414 N.W.2d 419, 422 (Minn.App.1987) (quoting *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 408 (Minn.1981)). The district court here did not find the damage awards in-

consistent, but found that "ample evidence in the record" sustained the jury's award of $48,000. The court also noted that appellants contended their actual investment loss was $48,300, and therefore the $48,000 award was appropriate. We conclude the jury award was supported by evidence in the record and the district court did not abuse its discretion in refusing to set it aside.

### III.

■ MFS contends that Ploetz was not acting within the scope of his employment when he committed the wrongful acts, and therefore the jury could not have found MFS to be vicariously liable for his acts. MFS first argues that because Ploetz was bound by the Minnesota Rules of Professional Responsibility, a violation of those rules was outside the scope of his employment. MFS further contends that since no evidence was presented that MFS had any knowledge of Ploetz's misrepresentations or that it participated in the deceit, it cannot be held liable. We disagree.

■ It is the rare case when an employee's wrongful act would actually further an employer's business. *Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd.*, 329 N.W.2d 306, 311 (Minn. 1982). But vicarious liability will apply where the employee's conduct involves an intentional wrong if the conduct occurs within work-related limits of time and place, and where the conduct should have been fairly foreseen from the nature of the employment and the duties relating to it. *Id.*

Ploetz engaged in the wrongful acts during business hours at the firm offices. The fees for the transaction were not paid to Ploetz individually, but were paid to MFS. The money was deposited into an MFS trust account and all relevant activities occurred within the work-related limits of time and place. Further, because the services fraudulently performed by Ploetz were similar in kind to services he would otherwise perform properly on behalf of

clients for the benefit of the firm, we cannot say MFS could not have reasonably foreseen that Ploetz could commit such a fraud. We conclude the jury did not err in determining that Ploetz committed fraud while acting in the scope of employment, and MFS was properly held vicariously liable for those wrongful acts.

## IV.

■ Ploetz argues the punitive damages should be denied because the issue of fraud was not properly before the court. We disagree. Although the original complaint does not specifically allege fraud, it does allege intentional and negligent conduct of Ploetz that resulted in the loss of more than $50,000. The complaint also relates facts detailing the fraudulent conduct. Ploetz claims fraud must be argued with particularity according to Minn. R. Civ. P. 9.02. But rule 9.02 only states that the circumstances constituting fraud or mistake shall be stated with particularity. Further, Minn. R. Civ. P. 8.01 requires only that a claim shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought * * *." Because the complaint also alleges that Ploetz was aware of the "fraudulent assignment document" between Annenberg and Fischer, and that he had a copy of this "fraudulent document" in his files, we conclude fraud was alleged with sufficient particularity.

■ Ploetz argues the jury was improperly instructed because punitive damages may only be awarded for intentional fraud, not constructive fraud, and the jury did not specify one or the other. Constructive fraud is a breach of an ethical duty, unaccompanied by intentional wrongdoing or actual fraud. *Gilchrist*, 387 N.W.2d at 416.

■ By determining that Ploetz's intentional acts caused $48,000 of damage and his negligence caused $0 damages, the jury indicated that Ploetz intentionally de-

frauded appellants. Further, in its order awarding treble damages, the court concluded that

> after a painstaking examination of the voluminous record, a thorough review of the applicable law, and careful consideration of the arguments of counsel, there is ample evidence that Defendant Ploetz intended to deceive Plaintiff John Baker during the underlying real estate transaction herein.

Because both the jury and the district court reasonably concluded that Ploetz intentionally deceived the Bakers, we conclude the punitive damage award was appropriate.

## V.

■ Ploetz contends the jury wrongfully determined that an attorney/client relationship was established when Ploetz conducted the closing with Baker. "Whether an attorney-client relationship exists is usually a question of fact dependent upon the communications and circumstances." *Admiral Merchants Motor Freight Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 265 (Minn.1992). This court should not overturn a jury's determination of an attorney-client relationship unless it is manifestly contrary to the evidence. *See Gillespie v. Klun*, 406 N.W.2d 547, 555–56 (Minn.App.1987) (concluding evidence supported finding of attorney-client relationship, court found jury's decision was not manifestly contrary to evidence, and affirmed), *review denied* (Minn. July 9, 1987).

■ An attorney-client relationship may be established when an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice. *Admiral Merchants*, 494 N.W.2d at 265–66. Here, Baker and Ploetz conducted the closing meeting at Ploetz's law firm, and Ploetz advised him that the arrangement was proper under Minnesota law. Baker believed Ploetz was the attorney for the partnership. The jury could reasonably

conclude that an attorney-client relationship was created. Thus, the jury determination was not manifestly contrary to the evidence, and we affirm the jury verdict.

Finally, we deny appellants' motions to strike respondents' sufficiency-of-the-evidence issues and deny appellants' motion to strike an affidavit in respondent Ploetz's brief.

## D E C I S I O N

We affirm the jury's determination that Ploetz's fraudulent acts took place within the scope of his employment with MFS. Because the acts occurred within the scope of employment, we reverse the district court's determination that respondent MFS is not vicariously liable for treble damages under Minn.Stat. § 481.07 (1998) and Minn.Stat. § 481.071 (1998). We affirm the district court's denial of respondents' motions for JNOV because there is sufficient evidence of causation and damages. We also affirm the jury's determination that there was an attorney-client relationship and affirm in all respects the punitive damage award against Ploetz.

**Affirmed in part and reversed in part; motions denied.**