John E. BAKER, et al., Respondents,

v.

John W. PLOETZ, Respondent,

Morris, Fuller & Seaver, P.A., petitioner, Appellant.

C6–98–2144

Supreme Court of Minnesota.

Aug. 17, 2000.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, Richard M. Carlson, Morris, Carlson & Hoelscher, Minneapolis, for appellant.

Scott A. Johnson, Johnson Law Group LLP, Minnetonka, for respondents Baker.

John W. Ploetz, St. Paul, pro se.

Stuart T. Williams, Henson & Efron, P.A., Minneapolis, for amicus curiae MN State Bar Association.

## OPINION

PAUL H. ANDERSON, Justice.

The law firm of Morris, Fuller & Seaver, P.A. appeals a Minnesota Court of Appeals decision holding it liable for treble damages for the fraudulent conduct of its associate attorney, respondent John Ploetz. A jury found that Ploetz committed fraud within the scope of his employment and that respondents John E. Baker and Barbara K. Baker (Bakers) were entitled to $48,000 in damages. The district court then ordered treble damages in the Bakers' favor against Ploetz, but not against Morris, Fuller & Seaver. The court of appeals affirmed the damages award against Ploetz, but also held Morris, Fuller & Seaver liable for treble damages under Minn.Stat. §§ 481.07 and 481.071 (1998). We reverse.

In September 1993, John Baker responded to Robert Annenberg's newspaper advertisement seeking investors for real estate properties located throughout the United States. When John Baker contacted Annenberg, Annenberg told him that there were a number of condominium units in Minneapolis that Annenberg's company, Property Access and Control, planned to purchase with money contributed by investors. According to Annenberg, the purchase price of each unit was $15,500, plus an additional $500 for closing costs. Payment for each unit was to be comprised of

a $10,000 contract for deed and $6,000 in cash. John Baker agreed that he and his wife, Barbara, would provide the necessary capital to purchase 12 units for $16,000 each. John Baker later stated that at this time he believed that he, his wife, and Annenberg would be acquiring the properties jointly from Michael Fischer, the man who Annenberg claimed owned the units.

On October 28, 1993, the Bakers signed a partnership agreement with Annenberg for the purpose of owning and operating the 12 units. On November 1, 1993, John Baker met with Fischer to inspect the units and to close the real estate sale. Following the inspection, John Baker went to the law offices of Morris, Fuller & Seaver to meet with Ploetz, whom John Baker understood to be the attorney for the partnership that he and his wife had formed with Annenberg. At that time, Ploetz was a salaried associate attorney at Morris, Fuller & Seaver and was to handle the closing.

The closing took place as scheduled at the law offices of Morris, Fuller & Seaver. At the closing, Ploetz met with John Baker, explained the closing procedure, and presented documents for his review. However, Ploetz had prepared two sets of closing documents, one set reflecting the actual sale from the true sellers to Annenberg for $13,000 per unit and the other for a fraudulent sale to the Bakers for $16,000 per unit. Ploetz did not disclose to John Baker any of the documents that revealed the actual $13,000 sale price or the names of the true sellers. During the closing, John Baker told Ploetz that he was confused because the documents indicated that he and his wife were being assigned the properties from Property Access and Control rather than acquiring them jointly with Annenberg. Ploetz then assured John Baker that such an assignment was how this type of real estate transaction was structured in Minnesota. Following

this assurance, John Baker proceeded with the closing and delivered $72,000 to Ploetz.

The Bakers' $72,000 payment was deposited in the Morris, Fuller & Seaver trust account. John Baker testified that he believed that all of these funds were to be applied to the $6,000 cash payment due for the down payment and closing costs on each of the 12 units. However, John Baker later learned that the actual purchase price for each unit was only $13,000 and that Michael Fischer was not the actual seller. After closing, Morris, Fuller & Seaver distributed the funds deposited in its trust account. It paid itself $2,600 in attorney fees, paid the settlement charges, refunded $2,769.09 in excess closing costs to the Bakers, and then distributed to Annenberg, without the Bakers' knowledge or consent, the balance of the funds invested by the Bakers. Annenberg and Property Access and Control subsequently defaulted on the contracts for deed for the 12 units, failing to make the required payments to the true sellers, who then sought payment from the Bakers.

In April 1995, the Bakers commenced an action against Ploetz and Morris, Fuller & Seaver for negligence and fraud in connection with the real estate transaction.[1] In their complaint, the Bakers asserted that they suffered over $50,000 in damages as the result of Ploetz's fraudulent acts. The case went to trial and a jury found that Ploetz committed fraud within the scope of his employment, that there was an attorney-client relationship between Ploetz and John Baker, and that the Bakers were entitled to $48,000 in damages. The jury also found that Ploetz was negligent, but denied the Bakers any damages arising from that negligence. The Bakers then moved for treble damages against both Ploetz and Morris, Fuller & Seaver under Minn.Stat. §§ 481.07 and 481.071 which classify attorney fraud as a misdemeanor and allow an injured party to collect treble damages. The district court concluded

1. On July 6, 1994, the Bakers released Robert Annenberg "from all claims and liability regarding these condominiums in the past, present, and future."

that sections 481.07 and 481.071 permit treble damages against Ploetz. But the court also concluded that sections 481.07 and 481.071 do not permit treble damages against Morris, Fuller & Seaver because there was no evidence of any fraud, deceit, or bad faith on its part.

The Bakers appealed, raising several issues, one of which was a claim that the district court erred in denying the Bakers' request for treble damages against Morris, Fuller & Seaver. Morris, Fuller & Seaver also appealed, challenging the denial of its Motion for Judgment Notwithstanding the Verdict, New Trial, or Remittitur, and challenging the sufficiency of the evidence to support the judgment.[2]

The court of appeals affirmed the district court's award of treble damages against Ploetz. *See Baker v. Ploetz*, 597 N.W.2d 347, 354 (Minn.App.1999). The court of appeals also concluded that the evidence in the record supported the jury's determination that Ploetz committed fraud while acting in the scope of his employment with Morris, Fuller & Seaver. *See id.* at 354. The court of appeals then reversed the district court, holding Morris, Fuller & Seaver vicariously liable for treble damages under sections 481.07 and 481.071. *See id.* at 355. The court of appeals determined that "the liability of a law firm under this statute is based not on its knowledge of or participation in the fraud, but on its employee's violation of the statute while acting in the scope of employment." *Id.* at 352. The court stated that subjecting law firms to treble damages will encourage law firms to carefully monitor their attorneys' conduct and increase the likelihood that a fraud victim will actually recover a monetary award. *See id.*

Morris, Fuller & Seaver appealed and we granted review only on the question of whether Morris, Fuller & Seaver was vicariously liable for the treble damages imposed against Ploetz for his fraudulent conduct. Morris, Fuller & Seaver argues that sections 481.07 and 481.071 are unconstitutional because they violate the doctrine of separation of powers. Further, it argues that sections 481.07 and 481.071 are penal in nature, that the statutes must be strictly construed, and that when strictly construed, neither statute applies to it. Finally, Morris, Fuller & Seaver argues that if vicarious liability applies to sections 481.07 and 481.071, liability should only be imposed when the factors for vicarious liability in punitive damages cases are established under Minn.Stat. § 549.20 (1998).

In response, the Bakers argue that under the doctrine of respondeat superior, Morris, Fuller & Seaver is as accountable as its employee for treble damages under sections 481.07 and 481.071. The Bakers challenge Morris, Fuller & Seaver's statutory construction argument, asserting that the statutes are remedial and not penal in nature, making strict construction unnecessary. Finally, the Bakers assert that Morris, Fuller & Seaver waived its constitutional arguments. In an amicus brief, the Minnesota State Bar Association raised for the first time on review to this court the argument that section 481.07 and section 481.071 do not apply to attorney fraud committed outside the scope of an action or judicial proceeding. Oral arguments took place on February 7, 2000.

After considering the oral and written arguments presented by the parties and amicus curiae, we determined that if we concluded that sections 481.07 and 481.071 apply only to fraud committed within an action or judicial proceeding, we need not address the vicarious liability issue. Therefore, on February 15, 2000, we issued an order for supplemental briefs to address the statutory interpretation issue

---

2. Although Ploetz submitted a brief to the court of appeals, he did not do so for this court. On October 29, 1996, Ploetz signed a Stipulation for Dispensing with Panel Proceedings, for Filing Petition for Disciplinary Action, and for Disbarment and this court officially disbarred him on December 20, 1996.

raised in the amicus brief and supported by Morris, Fuller & Seaver.

## I.

The two issues presented here are whether under either section 481.07 or section 481.071 a plaintiff can recover treble damages for attorney fraud that did not occur within the context of an action or judicial proceeding. These are issues of statutory interpretation, which we review de novo. *See Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn.1999), *cert. denied; Boutin v. Hvass*, —— U.S. ——, 120 S.Ct. 417, 145 L.Ed.2d 326 (1999) (citing *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993)).

We first examine the language of Minn.Stat. § 481.07 to determine its application. Minnesota Statutes § 481.07 reads as follows:

> An attorney who, *with intent to deceive a court or a party to an action or judicial proceeding*, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefor, the attorney shall be liable to the party injured in treble damages. If the attorney permit[s] any person other than a general law partner to begin, prosecute, or defend an action or proceeding in the attorney's name, the attorney giving such permission, and every person so using the name, shall forfeit $50 to the party against whom the action or proceeding is prosecuted or defended, recoverable in a civil action.

(Emphasis added.) This statute was first enacted by Minnesota's territorial legislature in 1851 as part of a chapter regulating the conduct of attorneys. *See* Rev. St. 1851 (Terr.), ch. 93 § 8. It was subsequently adopted by the state legislature in 1858 and is criminal in nature because it classifies this type of attorney misconduct as a misdemeanor. *See* Pub. St. 1858, ch. 82, §§ 8, 9.

Morris, Fuller & Seaver argues that the district court and the court of appeals erred in applying section 481.07 to the misconduct in this case. More particularly, it argues that section 481.07 does not apply because Ploetz did not act with the intent to deceive the court or a party to an action or judicial proceeding. Morris, Fuller & Seaver asserts that the plain language of section 481.07 states "in clear and unequivocal terms" that the statute applies to fraud perpetrated by an attorney on the court or a party to an action or judicial proceeding. In support of its interpretation, Morris, Fuller & Seaver directs our attention to a case from our court holding that section 481.07 applies only to attorney fraud occurring within the context of an action or judicial proceeding. *See Smith v. Chaffee*, 181 Minn. 322, 326, 232 N.W. 515, 517 (1930).

The Bakers respond to this argument in their supplemental brief by contending that there was evidence presented to the district court of deceit and fraud by Ploetz and Morris, Fuller & Seaver that occurred in connection with this judicial proceeding. Thus, the Bakers argue that section 481.07 does apply to the attorney fraud that occurred in this case and the damages against Ploetz and Morris, Fuller & Seaver should be trebled.

When interpreting a statute, we first must determine whether the statute's language, on its face, is clear or ambiguous. *See Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.* Basic rules of statutory construction instruct that words and phrases are to be construed according to their plain and ordinary meaning, *see Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980), and the language of criminal statutes is to be strictly construed, *see State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993).

A statute should be interpreted, whenever possible, to give effect to all of its provisions, and "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral,* 598 N.W.2d at 384 (citing *Owens v. Federated Mut. Implement & Hardware Ins. Co.,* 328 N.W.2d 162, 164 (Minn.1983)). Various provisions of the same statute must be interpreted in light of each other. *See Van Asperen v. Darling Olds, Inc.,* 254 Minn. 62, 74, 93 N.W.2d 690, 698 (1958). Finally, courts should construe a statute to avoid absurd and unjust consequences. *See Erickson v. Sunset Mem'l Park Ass'n,* 259 Minn. 532, 543, 108 N.W.2d 434, 441 (1961). If the language of a statute is ambiguous, courts then turn to the statute's legislative history to determine how the language should be construed. *See Amaral,* 598 N.W.2d at 385–86.

We conclude that the language of section 481.07 is not ambiguous. Section 481.07 imposes treble damages on an attorney who intentionally "deceive[s] a court or a party to an action or judicial proceeding." If we give these words their plain and ordinary meaning, deceiving a court clearly involves a judicial proceeding as opposed to misconduct that occurred outside the context of a judicial proceeding. In section 481.07, the term "party" is modified by the words "to an action or judicial proceeding." An "action" is defined as "[a] civil or criminal judicial proceeding." *Black's Law Dictionary* 28 (7th ed.1999). Historically, there was a distinction between an action for damages and a suit in equity for equitable relief, but now the two terms are "nearly if not quite synonymous." *See id.* at 29; *see generally* Fed.R.Civ.P. 2. A "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgement." *Black's Law Dictionary* 1221 (7th ed.1999). A proceeding is more comprehensive than an action, because a proceeding "may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment." *See id.* (quoting *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed. 1899)).

The language of section 481.07 restricts the definition of party to a person involved in an action or judicial proceeding. Our 1930 decision in *Smith v. Chaffee* supports this interpretation. *See Smith,* 181 Minn. 322, 232 N.W. 515. In *Smith,* we held that Section 5689, Gen. St.1923, the predecessor to section 481.07, did not apply to fraud in a real estate transaction because "[t]here was no such action or proceeding pending or under consideration at the time of the deceit here claimed." *Smith,* 181 Minn. at 326, 232 N.W. at 517. Thus, based on the plain meaning of the language used in Minn.Stat. § 481.07, we hold that the statute applies only to attorney fraud committed within the context of an action or judicial proceeding.

### II.

We next examine the language of section 481.071. The Bakers argue that section 481.071 has a broader application than section 481.07, asserting that it contains language that differs significantly from that in section 481.07. Minnesota Statutes § 481.071 provides that:

> Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, *with intent to deceive the court or any party,* or who shall delay the attorney's client's suit with a view to the attorney's own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefor, shall forfeit to the party injured treble damages, to be recovered in a civil action.

(Emphasis added.)

Morris, Fuller & Seaver essentially repeats the same arguments with respect to the language of section 481.071 that it made for its interpretation of section 481.07. It asserts that, while § 481.07 contains language explicitly referring to

"action or judicial proceeding," that language is implicit in the context and language of § 481.071. Thus, Morris, Fuller & Seaver argues that section 481.071 does not apply to the misconduct in this case because Ploetz's acts of fraud were not committed within the context of an action or judicial proceeding. In support of its argument, Morris, Fuller & Seaver directs our attention to holdings of New York courts, which limit the application of identical language to attorney fraud occurring within such a context. Morris, Fuller & Seaver refers us to New York court decisions because in 1885 the language of section 481.071 was adopted, nearly word for word, from a New York penal statute. *Compare* Minn. Penal Code § 123 (Minn. Gen.Stat. 1891 § 6078) *with* N.Y. Penal Code § 148, now codified as N.Y. Judiciary Law § 487 (McKinney 1983).

The Bakers respond that the court of appeals correctly applied section 481.071 to treble damages against both Ploetz and Morris, Fuller & Seaver because the legislature "intended both Minn.Stat. §§ 481.07 and 481.071, when read together, to encompass deceit or collusion by any attorney, whether participating in a judicial proceeding or otherwise." The Bakers contend that because we have consistently held that Minnesota statutes are to be construed so that no word, phrase, or sentence is superfluous, section 481.071 should be given a broader application than section 481.07 and we should hold that section 481.071 applies to attorney fraud that occurs beyond the confines of an action or judicial proceeding.

We begin our analysis by noting that the language of Minn.Stat. § 481.071 is not as clear as the language in section 481.07. Section 481.071 provides for the trebling of damages for attorney fraud committed with the "intent to deceive a court or any party." Unlike section 481.07, in section 481.071 "party" is not qualified by any language that clearly demonstrates that it refers to those who are a party to an action or judicial proceeding. Thus, the focus of our analysis of section 481.071 is on the meaning of the word "party."

Defining party, without the qualifying language present in section 481.07, is a complicated task. Party, in the legal sense, means "[o]ne by or against whom a legal suit is brought." *Black's Law Dictionary* 1144 (7th ed.1999). While this legal definition limits a party to those who are part of a legal suit, party is also defined as "[o]ne who takes part in a transaction," as in a party to a contract. *Id.* Further, even though party has been described as "a legalism that is unjustified when it merely replaces person," if it is used as a shortened reference to "party to the contract or party to the lawsuit, party is quite acceptable as a term of art." *A Dictionary of Modern Legal Usage* 641 (2d ed.1995).

We have not directly addressed the issue of section 481.071's applicability or the meaning of the word party within that section. We have stated that sections 481.07 and 481.071 are "virtually identical," but we made this comment in passing and in a completely different context; therefore, it is not helpful. *See Gilchrist v. Perl*, 387 N.W.2d 412, 419 (Minn.1986). Morris, Fuller & Seaver claims that we decided in *Smith* that the predecessor to section 481.071 applied to an attorney who intended to deceive a party to a lawsuit. *See Smith*, 181 Minn. at 326, 232 N.W. at 517. However, our decision in *Smith* did not decide whether the statute applied outside of an action or judicial proceeding, but only that the statute did not create a new cause of action. *See id.*

Not having previously interpreted the specific language of section 481.071, we look to its legislative history for assistance. *See Amaral*, 598 N.W.2d at 385–86. Minnesota Statutes § 481.071 was enacted in 1885 as part of our legislature's extensive adoption of the New York Penal Code to comprise the Minnesota Penal Code. *See generally* Minn. Gen.Stat. ch. 86 (1891) (Kelly) (citing throughout various sections of the New York Penal Code from which

the Minnesota Penal Code was taken); Minn. Gen.Stat. § 6078 (1891) (predecessor to section 481.071). The legislature's word-for-word adoption of the New York Penal Code lessens the likelihood that the legislature considered the specific language of any section of the Code before its adoption. Further, because sections 481.07 and 481.071 were enacted at different times and were not originally codified in the same chapter, there is little support for the assertion that section 481.071 was adopted to address fraud not punished by section 481.07. However, the statute's legislative history is helpful because it emphasizes the importance of New York law when ascertaining the meaning of the word party as used in the statute.

When a statutory provision is taken from another state after the court of last resort of that state has construed the provision, then it is presumed that the adopting state also adopts the state of origin's statutory construction. *See Marier v. Memorial Rescue Serv., Inc.,* 296 Minn. 242, 244–45, 207 N.W.2d 706, 708 (1973) (citing *Olson v. Hartwig,* 288 Minn. 375, 377, 180 N.W.2d 870, 872 (1970)); *see also Ewers v. Thunderbird Aviation, Inc.,* 289 N.W.2d 94, 99 n. 6 (Minn.1979); *Minnesota Baptist Convention v. Pillsbury Academy,* 246 Minn. 46, 53–54, 74 N.W.2d 286, 291 (1955). Under this rule of construction, when Minnesota enacted section 481.071, it adopted New York's interpretation of party. Further, this rule carries particular weight here because New York interpreted the language of its statute just one year before our legislature's adoption of the identical language.

New York courts have interpreted Judiciary Law § 487, with language identical to section 481.071, as relating

> to a case where the attorney intends to deceive the court or his client by collusion with his opponent, or by some im-

proper practice. They do not, we think, include a transaction antecedent to the commencement of the action, as the court could have no connection with any such proceeding. The "party" referred to is clearly a party to an action pending in a court in reference to which the deceit is practiced, and not a person outside, not connected with the same at the time or with the court.

*Looff v. Lawton,* 97 N.Y. 478, 482 (1884). *See also Gelmin v. Quicke,* 224 A.D.2d 481, 638 N.Y.S.2d 132, 134 (1996) (relying on *Looff* to hold that § 487 did not apply because the fraud took place before commencement of the action); *Beshara v. Little,* 215 A.D.2d 823, 626 N.Y.S.2d 310, 311 (N.Y.App.Div.1995) (holding that § 487 did not apply because the fraud did not take place in the context of a pending judicial proceeding); *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 590 N.Y.S.2d 201, 203 (1992) (holding that § 487 did not apply because the deceit did not occur during a pending judicial proceeding in which plaintiff was a party); *Nardella v. Braff,* 621 F.Supp. 1170, 1172 (S.D.N.Y.1985) (holding that § 487 did not apply because no action was ever filed).

We find further support for this interpretation of the word party in the decision of the only other state to have interpreted language nearly identical to that in section 481.071. Montana construes party, in a similar statute, to apply to attorney fraud committed within the context of an action or judicial proceeding. *See* Mont.Code Ann. § 37–61–406 (1999).[3] In 1984, the Montana Supreme Court refused to apply section 37–61–406 to allow an award of treble damages because the case did not involve "deceit practiced upon the court or the adverse party during the litigation process." *Eaton v. Morse,* 212 Mont. 233, 687 P.2d 1004, 1010 (1984).

---

**3.** Montana Code Annotated § 37–61–406 (1999) provides that "An attorney or counselor who is guilty of any deceit or collusion or consents to any deceit or collusion *with intent* *to deceive the court or a party* forfeits to the party injured by his deceit or collusion treble damages. He is also guilty of a misdemeanor." (Emphasis added.)

The Bakers argue that this interpretation of the word party conflicts with three other rules of statutory interpretation. They argue that statutes should be interpreted to give effect to all of their provisions. *See generally Amaral*, 598 N.W.2d at 384. They contend that if we interpret section 481.071 to apply only in an action or judicial proceeding, it will have the same application as section 481.07, causing the first part of section 481.071 to have no effect. The Bakers next argue that the New York interpretation, when applied to section 481.071, violates the rule of statutory interpretation directing courts to construe statutes to avoid absurd results and unjust consequences. *See Erickson*, 259 Minn. at 543, 108 N.W.2d at 441. They assert that if section 481.071 is read to apply only to litigation fraud, an attorney who commits fraud in a court proceeding will be subject to treble damages whereas the fraud of an attorney who writes a will, negotiates a contract, creates a trust, or participates in a real estate transaction would not be subject to the same penalty. They contend that it is absurd that an attorney who commits fraud can avoid treble damages when the matter does not involve an action or judicial proceeding. Finally, the Bakers also argue that interpreting section 481.071 as applying only to fraud in court leads to unjust results because fraud victims whose matters do not involve an action or judicial proceeding do not have the same remedy as a victim whose fraud occurred within the bounds of an action or judicial proceeding.

■ While we agree that some of the rules of statutory construction cited by the Bakers conflict with our adoption of the New York and Montana definition of party, we conclude other rules of construction mandate our adoption of this definition. Because section 481.071 makes attorney fraud a misdemeanor, it is a criminal statute. The rules of statutory construction require that a criminal statute be strictly construed. *See Zacher*, 504 N.W.2d at 473. This rule of strict construction as applied to the interpretation of penal statutes requires that all reasonable doubts concerning legislative intent be resolved in favor of the defendants. *State v. Olson*, 325 N.W.2d 13, 19 (Minn. 1982). We have said that before "a person may be subject to criminal liability, it must be reasonably certain that the statute or ordinance renders his conduct a criminal offense." *Wong v. American Family Mut. Ins. Co.*, 576 N.W.2d 742, 745 (Minn.1998) (quoting *State v. Larson Transfer and Storage, Inc.*, 310 Minn. 295, 304, 246 N.W.2d 176, 182 (1976)). Therefore, a narrow definition must be applied to section 481.071 so as not to criminally punish individuals or actions beyond what the legislature intended. *See generally State v. Larson*, 605 N.W.2d 706, 713–14 (Minn.2000).

■ Further, we do not agree with the Bakers' argument that it is absurd or unjust to punish more severely attorney fraud committed on the court or within the context of a judicial proceeding. There is plausible concern about attorneys who, having taken an oath to uphold justice, engage in fraudulent behavior intended to deceive a party to an action or proceeding before the court. This type of fraud damages the integrity of the judicial system and weakens the faith of the citizenry in the third branch of the government. Reading section 481.071 as enforcing a more severe punishment on attorneys who commit fraud within an action or judicial proceeding is not an absurd or unjust interpretation.

■ For all of the foregoing reasons, we conclude that when the legislature adopted New York's penal code by enacting section 481.071 over 100 years ago, it in effect adopted New York's interpretation of the word "party." If the definition of this word is to be changed, it must be changed by the legislature, not by us. Therefore, we hold that section 481.071 applies only to attorney fraud committed in the context of an action or judicial proceeding. Accordingly, we reverse the dis-

trict court's award of treble damages against Ploetz and the court of appeals' award of treble damages against Morris, Fuller & Seaver. However, because the district court incorrectly interpreted and applied both section 481.07 and section 481.071 and did not determine whether attorney fraud was committed in the context of an action or judicial proceeding, we remand to the district court for a determination of whether Ploetz or Morris, Fuller & Seaver committed fraud in the context of an action or judicial proceeding.

Because our conclusions pertaining to the proper interpretation of sections 481.07 and 481.071 are dispositive, we conclude that there is no need for us to reach Morris, Fuller & Seaver's separation of powers argument.

Reversed and remanded.

PAGE, Justice (dissenting).

I respectfully dissent. It is the constitutional responsibility of this court to regulate the practice of law. *See In re Integration of Bar of Minnesota,* 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943). That responsibility includes protecting the public from unscrupulous attorneys. *See In re Isaacs,* 451 N.W.2d 209, 211 (Minn.1990). We have recognized this responsibility since at least 1945. *See In re Smith,* 220 Minn. 197, 199, 19 N.W.2d 324, 325 (1945). We have also recognized our responsibility to guard the administration of justice as well as to deter future misconduct by attorneys. *See Isaacs,* 451 N.W.2d at 211.

Today, the court neglects those responsibilities by holding that Minn.Stat. § 481.071 does not apply to attorney fraud perpetrated on a client outside of a judicial proceeding. Implicit in that holding is the notion that attorney fraud committed in a court or in a judicial proceeding is somehow more serious than attorney fraud committed outside of a court or judicial proceeding. In fact, attorney fraud, wherever it occurs, is extremely serious and certainly attorney fraud on a client that occurs outside of a court or judicial pro-

ceeding is neither less serious nor less harmful than that which occurs in court or within a judicial proceeding.

The real question here is whether we are going to protect the interests of attorneys and law firms or those of the public. For me, that is an easy question to answer. New York jurisprudence notwithstanding, I would vindicate our constitutional responsibility as well as give meaning to the language of Minn.Stat. § 471.071 by holding that the term "party," as used in the statute, includes parties to transactions outside of judicial proceedings and that section 481.071 applies to those parties.