Sara **THORSON**, Appellant,

v.

**BILLY GRAHAM EVANGELISTIC ASSOCIATION**, Respondent.

No. A04–404.

Court of Appeals of Minnesota.

Oct. 19, 2004.

Anne M. Radolinski, Wade S. Davis, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; STONEBURNER, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant brought an employment-discrimination action under the Minnesota Human Rights Act (MHRA), alleging that respondent terminated her employment on the basis of her sexual orientation. The district court granted respondent's motion for summary judgment, finding respondent exempt from the sexual-orientation provisions of the MHRA because it is a non-profit religious association not engaged in a secular business activity. We affirm.

## FACTS

Respondent Billy Graham Evangelistic Association (BGEA) promotes Christianity through a combination of live events, productions for film and television, and publi-

cation of books, pamphlets, and magazines. Its employees are required to profess Christianity and participate in devotional activities.

Appellant Sarah Thorson is a professed Christian who has worked at BGEA since June 1971. She started as a mailroom clerk and has continued in mailroom functions over the course of her career. In one position, as a night supervisor, she led other employees in prayer during meetings. Thorson's most recent position was as a bulk-mail services coordinator, in which she prepared mail and reported shipping for various BGEA departments. Her responsibilities have never involved development or production of evangelical media.

In February 2002, two employees reported seeing Thorson kissing another woman in the parking lot at work. At a meeting on February 21, 2002, two supervisors confronted Thorson with the allegations. Thorson admitted that she is a lesbian. One of her supervisors advised that, unless Thorson reconsidered her "lifestyle," she would be terminated.

Following the meeting, Thorson was placed on leave. Thorson sent a letter to BGEA on March 7, 2002, asserting that her sexual orientation did not affect her employment and requesting that she be allowed to continue working for BGEA. BGEA did not respond to this request. Based on a determination that Thorson's sexual orientation was inconsistent with BGEA's mission, BGEA terminated Thorson's employment on June 24, 2002.

Thorson brought a lawsuit against BGEA, claiming that BGEA had discriminated against her on the basis of sexual orientation, in violation of the MHRA, Minn.Stat. § 363A.08, subds. 2 (barring discharge of employee because of sexual orientation), 4 (barring employer from requesting that employee furnish informa-tion as to sexual orientation) (Supp.2003). BGEA moved for summary judgment, contending that it was exempt from the sexual-orientation provisions of the MHRA. The district court entered summary judgment in favor of BGEA. This appeal followed.

## ISSUE

Is the Billy Graham Evangelistic Association exempt from the Minnesota Human Rights Act's prohibition against discrimination in employment based on sexual orientation?

## ANALYSIS

■■■ Thorson argues that, because she was engaged in a secular business activity as a mailroom employee, BGEA is not exempt from the operation of the MHRA. On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters. Inc.,* 581 N.W.2d 855, 856 (Minn.1998). In doing so, we view the evidence in the light most favorable to the party against whom judgment was entered. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Under limited circumstances, nonprofit religious associations are exempt from the MHRA's prohibition against discrimination based on sexual orientation. The exemption provides in relevant part:

Nothing in this chapter prohibits any religious association ... that is not organized for private profit, or any institution organized for educational purposes

that is operated ... by a religious association ... that is not organized for private profit, from: ...

(2) in matters relating to sexual orientation, taking any action with respect to education, employment, housing and real property, or use of facilities. This clause shall not apply to secular business activities engaged in by the religious association ... the conduct of which is unrelated to the religious and educational purposes for which it is organized.

Minn.Stat. § 363A.26 (Supp.2003). The critical question for our consideration is the meaning of "secular business activities ... the conduct of which is unrelated to the religious and educational purposes for which [a nonprofit religious association] is organized."

■ Our primary purpose, when considering the meaning of this statute, is to give effect to legislative intent as expressed in the statutory language. Minn. Stat. § 645.16 (2002); *State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003). When the meaning of a statute's language is clear, we interpret the language according to its plain meaning without resorting to further construction. Minn.Stat. § 645.16; *Molloy v. Meier*, 679 N.W.2d 711, 723 (Minn.2004). But when the language of a statute is reasonably susceptible of more than one meaning, we may employ principles of construction to resolve the ambiguity. Minn. Stat. § 645.16; *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn.2002).

To determine whether a workplace activity is a secular business activity, Thorson asserts that the activity should be evaluated according to the job responsibilities of the particular employee. BGEA counters that the activity should be viewed in the context of the employer's purpose and mission as a whole to determine whether the business activity is secular or religious. Because we conclude that the statutory phrase "secular business activities" is reasonably susceptible to more than one interpretation, we employ applicable principles of construction to determine its meaning here. *See* Minn.Stat. § 645.16 (listing appropriate considerations to use when resolving ambiguity).

■ Legislative history, including records of legislative hearings and changes in statutory language, may be used to resolve ambiguity in statutory language. Minn. Stat. § 645.16(7); *Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn.2000). Of relevance here are the statements made by the bill's sponsors during legislative floor debates. One of the House sponsors, Representative Ron Abrams, offered this observation regarding the statutory language at issue here:

[U]pon receiving a complaint ... dealing with, let's say, the termination of a pastor's secretary because of her [sexual orientation], ought to have the right not to be investigated.... [W]hat the intention here is to give the broadest possible recognition and scope to the fundamental American value of separation of church and state....

I asked the Commissioner of Human Rights ... under [a prior version of the bill], if they received a complaint dealing with a secretary or a choir director or a janitor, and they found probable cause that the person was terminated solely based upon sexual orientation, would the department prosecute? And his unequivocal answer was "yes." This language changes it to "no."

Floor Debate on H.F. 585, 78th Legis. (Mar. 18, 1993). He also explained that certain secular activities of a religious association, such as running a "for-profit

printing press" or a hospital would remain subject to the MHRA. *Id.*

Similar concerns were raised in the Senate, leading to these comments by the Senate sponsor, Senator Allen Spear:

> The religious exemption that's in the bill was worked out with the joint religious legislative coalition and other interested religious groups. Since then we've had more discussions, and have decided to broaden the amendment and make it absolutely clear that religious organizations would not be forced to hire people who adhere to a lifestyle that is contrary to their religious beliefs.
>
> . . . .
>
> Some few people did come to me and say, "Why don't we just make it an absolute exemption." And this is what this amendment does. There is one clause in there that simply clarifies that while we are giving absolute exemption to churches, synagogues, religious institutions and societies, we would not be covering secular business activities that are not related to the purpose of the church. So we're talking about things, perhaps, like Augsburg Publishing, or something like that, which is a commercial secular business enterprise. But all the hiring, the renting of facilities, that are done by the church or the religious organizations would be exempt under this amendment.

Floor Debate on S.F. 444, 86th Legis. (Mar. 18, 1993). Later in the debate Senator Joann Benson asked Senator Spear:

> In those religious organizations, let's say a school or whatever, [the religious association exemption] then allows the person who hires to hire everyone in that school, from top to bottom, whether they're teachers or cooks or whatever, if they look at this as a whole entity?

*Id.* Senator Spear responded:

> Madame Chair, that's correct. It would allow them to hire as they choose

without regard to the restrictions of this bill for everyone that they hire.

> The question had been raised ... about what the words meant [under a prior version of the bill] that it is "necessary to promote the religious tenets, teachings or principles for which it is established or maintained." And there was some confusion whether that meant just the ministers or the teachers but it would also include the cooks and the janitors. By removing that language we make it clear that the exemption includes everybody.

*Id.*

■ The MHRA's prohibition against discrimination in employment based on sexual orientation applies to the secular business activities of a nonprofit religious association that are *"unrelated* to the religious and educational purposes for which [the religious association] is organized." Minn.Stat. § 363A.26(2) (emphasis added). In accordance with legislative intent, we conclude that the phrase "secular business activities" is properly considered in light of the purpose and mission of the entire entity, not the job responsibilities of the individual employee. Here, BGEA's activities are exclusively evangelical and are entirely related to the religious purpose for which it is organized. It is, therefore, exempt from the sexual orientation provisions of the MHRA.

■ Thorson maintains that, because any activity of a nonprofit religious association may be deemed to serve a religious purpose, under the construction adopted here, there are no secular business activities that are governed by the MHRA. In effect, Thorson argues, the exception swallows the rule. We disagree. Indeed, the statute must be construed, whenever possible, in a manner that gives

effect to all its provisions. Minn.Stat. § 645.16; *Vlahos v. R & I Const. of Bloomington, Inc.,* 676 N.W.2d 672, 679 (Minn.2004). It is evident from the legislative history that, when a nonprofit religious association is engaged in ordinary commerce, such as operating a hospital or printing press, the exemption will not cover these secular activities. Conversely, BGEA's business is the promotion of its evangelical ministry. Its business activities are not a matter of ordinary commerce. Rather, they are exclusively in furtherance of BGEA's religious purpose. Even though we determine that BGEA is not engaged in a secular business activity, our holding does not preclude a contrary result when a nonprofit religious association's business activity cannot be attributed to its religious purpose.

Citing our recent holding in *Egan v. Hamline United Methodist Church,* 679 N.W.2d 350, 355–56 (Minn. App.2004), *review denied* (Minn. June 29, 2004), Thorson also argues that we should apply the "ministerial exception" of Title VII of the Civil Rights Act to determine whether her employment is a secular business activity. This federal constitutional doctrine, developed in accordance with the Free Exercise Clause, prevents the operation of Title VII of the Civil Rights Act when it potentially encroaches on matters of religious practice. *See Rayburn v. Gen. Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1168–69 (4th Cir.1985) (applying exception to bar suit by woman denied pastoral position because state's scrutiny of church's choice violates the free exercise clause); *McClure v. Salvation Army,* 460 F.2d 553, 560 (5th Cir.1972) (establishing exception because applying Title VII to employment relationships between church and minister results in an unconstitutional encroachment into religious freedom). But in *Egan* we did not conclusively adopt the ministerial exception, noting that it "is more demanding than the Minnesota statutory test." 679 N.W.2d at 356. To effectuate legislative intent and give proper effect to the religious-association exemption of the MHRA, we decline to apply the ministerial exception here.

Both parties raise several additional statutory and constitutional claims, none of which were decided by the district court. Because there is no present controversy to be resolved on these issues, we decline to consider them here. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (appellate court must generally consider only matters argued before and decided by the district court); *Edina Cmty. Lutheran Church v. State,* 673 N.W.2d 517, 521–22 (Minn.App. 2004).

## DECISION

Because BGEA's business activities are exclusively related to its evangelical ministry, they are not secular business activities unrelated to the religious and educational purposes for which BGEA is organized. Accordingly, BGEA is exempt from the sexual-orientation provisions of the Minnesota Human Rights Act. The district court applied the law correctly when it entered summary judgment in favor of BGEA.

**Affirmed.**